## STUMB MOTOR COMPANY v. JAMES R. PATTERSON.

Middle Section. November 3, 1928.

Petition for Certiorari denied by Supreme Court, January 19, 1929.

J. L. Reynolds, of Nashville, for plaintiff in error.
Geo. R. Jenkins, of Murfreesboro, for defendant in error.

FAW, P. J. The Stumb Motor Company, a Tennessee corporation, has appealed in error to this court from a judgment of the circuit court for $304.10 and costs of suit, rendered against it and in favor of James R. Patterson, the plaintiff below.

The suit was originally brought and tried before a Justice of the Peace of Davidson county, who gave judgment for the defendant

Stumb Motor Company, whereupon the plaintiff Patterson appealed to the circuit court of Davidson county, and the case was tried in the third circuit court, without a jury, and the court found the matters in controversy in favor of the plaintiff Patterson and rendered judgment in his favor for $304.10 and costs, as before stated.

For convenience, we will refer to the parties as plaintiff and defendant, respectively, as they appear on the record in the trial courts.

The plaintiff states his cause of action in the warrant issued by the Justice of the Peace as follows:

"A plea of debt due by reason of the failure of the said Stumb Motor Company to advertise and sell a certain Dodge Automobile, motor number A323-867, serial number A251971 in accordance with the requirements of the conditional sales laws of the State of Tennessee as embodied in Chapter 81 of the Public Acts of 1889 and the amendments thereto, the defendant having sold said automobile to the plaintiff under a conditional sales contract and also having regained possession of said contract on or about the —— day of ——, 1928, wherefore the plaintiff sues to recover that part of the consideration which he has paid the defendant under said contract under Five Hundred Dollars."

At the outset of the trial below, the parties, through their attorneys of record, entered into a "stipulation of facts," which appears in the bill of exceptions, and which is as follows:

"That on October 27, 1927, the plaintiff Dr. James R. Patterson, a resident of Murfreesboro, Rutherford county, Tennessee, bought from the Stumb Motor Company, 1408 Broadway, Nashville, Davidson county, Tennessee, through its salesman, J. H. Abernathy, a certain 1925 Dodge Coupe for the consideration of Six Hundred and Fifty-three ($653) Dollars, Two Hundred and Seventy-five ($275) Dollars of which was paid by an automobile traded in as cash, for the balance of this consideration he executed a conditional sales contract or note for Three Hundred and Seventy-eight ($378) Dollars, divided into eleven (11) installments of thirty-two (32) each and one installment of Twenty-six ($26) Dollars, the first of said installments being due on or before one month after date and the remaining installments due on the corresponding date of each month thereafter;

That the note retained title to the said 1925 Model Dodge Coupe Motor No. A323.867 Manufacturer's serial No. A251-975 and contained the usual provision that in the event of the default of any one of the installments, the entire amount might be declared due and payable. The note further contained the usual provision for attorney's fees, etc., that only one of these installments was ever paid twenty-nine ($29.10) dollars and that there was default in the payment of each and every installment after the 27th day of December, 1928. That on March 21, 1928, the

note or conditional sales contract being then in default, the Stumb Motor Company caused to be issued a replevy warrant for the property described in the conditional sales contract, by G.,Howard Wilkinson, a Justice of the Peace of Davidson county, Tennessee, and placed in the hands of Ed Pugh, a deputy sheriff of said county, who served the warrant on J. H. Abernathy and served the replevin warrant on the car at the Stumb Motor Company garage and left the car there. That no warrant was served on James R. Patterson, who then lived in Murfreesboro, Rutherford county, Tennessee; that on March 22, 1928, a judgment was entered on the docket of the said G. Howard Wilkinson, Justice of the Peace, sustaining the replevy warrant and awarding possession of the property to the Stumb Motor Company; that on March 26, 1928, the Stumb Motor Company caused notices of sale to be placed at three places in Davidson county, Tennessee, namely, the east door of the Court House, the used car department of the Stumb Motor Company, 1310 Broadway and the office of G. Howard Wilkinson, Justice of the Peace on Union street, advertising the property described in the replevy warrant for sale to the highest bidder for cash between the hours of 10 and eleven o'clock A. M. on the 6th day of April, 1928; that on that date at the hours named, the property was sold to the highest bidder and bid in by the Stumb Motor Company; that the plaintiff James R. Patterson did not attend said sale and he had no notice of same."

Both parties, respectively, introduced evidence, in addition to the "stipulation of facts" above quoted, but, before referring more specifically to such additional evidence, it will be well to state the points of controversy between plaintiff and defendant.

Plaintiff contends that when defendant advertised and sold the automobile in question it failed to comply with the conditional sales law of this State (Acts of 1889, Chapter 81, as amended by the Acts of 1911, Chapter 8) in two particulars, viz: (1). That defendant did not advertise and sell the car in the county where the plaintiff (the original purchaser) resided, and in which county, the plaintiff insists, the original contract of sale and purchase was made, and (2) that defendant did not advertise the car for sale within ten days after it regained possession thereof.

The defendant insists (1) that it did not regain possession of the car in Rutherford county, but in Davidson county, and that the law did not require it to advertise and sell the car in Rutherford county, where the plaintiff resided, and (2) that it advertised the car for sale, in full compliance with the requirements of the conditional sales law, within ten days after it regained possession thereof. Defendant does not deny that the car was in its garage for a period of more than ten days before it was advertised for sale by defendant, but

defendant insists that the car was stored in its garage by J. H. Abernathy, as agent for plaintiff, and was not, in contemplation of law, in the possession of defendant,—certainly not for the purpose of enforcing defendant's rights under the sale contract, that is, "because of the consideration remaining unpaid at maturity."

The record does not disclose the particular views of the facts and the law of the case entertained by the learned trial judge, but his finding of the matters in controversy in favor of the plaintiff is equivalent to a general verdict upon a correct charge, and will not be disturbed if there is any material evidence in the record upon which such finding and judgment could be reasonably predicated.

Through its assignments of error the defendant asserts that there is no evidence to sustain the finding and judgment of the trial court. The remaining assignments, insofar as they raise questions which may be considered by this court, are, in substance, merely reasons advanced on behalf of defendant in support of the proposition just stated.

J. H. Abernathy, as a witness for the defendant Stumb Motor Company, testified as follows:

"My name is J. H. Abernathy, I live in Nashville, Tennessee, and have lived here for a number of years. I have been employed by the Stumb Motor Company as salesman for new and used cars, at 1403 Broadway, Nashville, Tennessee, for a period of about three years. I conducted the entire negotiations for the original sale of the 1925 Dodge Coupe described in the original contract you have before you and sold Dr. Patterson this car under the terms set out in that written instrument.

"Dr. Patterson lived at Murfreesboro and the negotiations were carried on there. The contract was signed by Dr. Patterson at Murfreesboro.

"I am merely a salesman for the Stumb Motor Company and all contracts that I have signed must be presented to Mr. Stumb or some other official of the Stumb Motor Company for its approval before the Company considers itself bound.

"The contract in question here was filled out at the office of the Stumb Motor Company at Nashville, Tennessee, and carried to Dr. Patterson, who executed it at Murfreesboro on October 27, 1927, and was then brought back to Nashville and presented to the Stumb Motor Company.

"After Dr. Patterson had used the car for a period of about one month or over and after he had made the first payment on it, he seemed to become dissatisfied with it. He said the car used too much gasoline and he wanted a model of another car. Two or three times he brought it back to the Stumb Motor Co. repair department and they undertook to correct the trouble and meet the plaintiff's objections, but Dr. Patterson continued to

complain about the car. I finally went to see Dr. Patterson and he told me that he wanted another car and asked me to take this Dodge Coupe and undertake to sell it for him.

"I work on a commission with the Stumb Motor Company and frequently take cars for sale on my own hook. I have two or three there now that I am trying to sell for third parties, with which the Stumb Motor Company has no connection. I do this on the side. These cars I keep in the Stumb Motor Company Garage, 1310 Broadway, Nashville, Tennessee. Finally in order to satisfy Patterson, I agreed to take this car and sell it for him. I spent one whole day in Murfreesboro trying to sell it there for him. I called on a number of people in my efforts to dispose of it there for him but I was not successful in making a sale. Patterson kept complaining about the car and urged me to come after it and sell it in Nashville for him.

"Sometime in February, 1928, I got on the Bus and went to Murfreesboro and found the car in a public garage there. I personally bought the gas and oil and brought the car to Nashville and left it at the garage of the Stumb Motor Company, 1310 Broadway. When I took the car from the garage at Murfreesboro I was asked by the garage keeper who would pay the storage bill. He said it was charged to Dr. Patterson, I told him to collect the storage then from Dr. Patterson, but if he failed to pay it, I would arrange for the payment myself. I took charge of this Dodge Coupe and drove it myself around Nashville here and made frequent and repeated efforts to sell it for Dr. Patterson to various individuals in the city of Nashville. In so doing I did not consider myself acting for the Stumb Motor Company at all, but as an individual, as an agent for Dr. Patterson to sell this car for him. While it was at the garage of Stumb Motor Co. at 1310 Broadway, the officer, Mr. Ed Pugh served a replevy warrant on me from Esq. G. H. Wilkinson, Justice of the Peace, and left the automobile at Stumb Motor Company Garage.

"This was on March 21, 1928. I remember having seen the notice of the sale, which you hold in your hand, posted at the used car department of the Stumb Motor Company and I saw a copy of this same notice posted at Esq. Wilkinson's office. I have read this notice and it is a copy of the ones I saw advertising the Dodge Coupe for sale at the used car department of the Stumb Motor Company, 1310 Broadway, Nashville, Tennessee, between the hours of 10 and 11 on the 6th day of April, 1928.

### Cross-Examination.

"On cross-examination Mr. Abernathy testified that after the contract in question was made out by the Stumb Motor Co. in the office at Nashville, he took the contract and the automobile to

Murfreesboro where Dr. Patterson signed the contract and he (Abernathy) also signed it as a witness and thereupon closed the trade by taking Abernathy's old car for the cash payment and delivering the automobile in question to Patterson, then and there. That it was in December 1927 when he tried to sell the car for Dr. Patterson in Murfreesboro. That after he got the car from Byrn Reagor Motor Company in Murfreesboro and brought it to Nashville, which was about February 12, 1928, he used the car personally for two or three days and then placed it in Stumb Motor Company's garage and left it there. That when he went to Byrn Reagor Motor Company in Murfreesboro to get the automobile he did not tell Mr. Carney or Mr. Bowles that he had come to get the automobile which Dr. Patterson had left there for Stumb Motor Company and that he did not instruct Mr. Carney or Mr. Bowles to charge the storage of the car to Dr. Patterson and that if Dr. Patterson did not pay it Stumb Motor Company would.''

Andrew Stumb testified, as a witness for plaintiff Patterson, as follows:

''That he is the Assistant Manager of the used car department of Stumb Motor Company, and that Dr. Patterson had made numerous complaints to the Stumb Motor Company about the condition of the car which they sold him. They had several times made repairs on the car without charge in an effort to satisfy Dr. Patterson. That J. H. Abernathy was in the employ of Stumb Motor Company and authorized to sell automobiles and make contracts in behalf of Stumb Motor Company, provided that the Company should approve the trade in valuations of all cars which should be taken in trade by the Company. That on the morning of February 10, 1928, Dr. Patterson came to Stumb Motor and asked him (Andrew Stumb) when they were going to get that car? And that he told Dr. Patterson that Mr. Abernathy had already gone to Murfreesboro that morning to see him. This was the same day that Mr. Abernathy got the car in Murfreesboro and brought it to Nashville. Dr. Patterson had been to Stumb Motor Company several times before that day and had telephoned Stumb Motor Company a few days before this time and told them that the car was stored at Byrn Reagor Motor Company and for them to send and get it.

### Cross-Examination.

''On cross-examination Mr. Stumb testified that Mr. Abernathy sometimes made personal trades which the Stumb Motor Company had nothing to do with. That the notice of sale which was posted at the garage of the Stumb Motor Company was posted near the entrance of said garage and that the garage is

a public place. Sometimes in order to make a sale Mr. Abernathy would undertake to sell second hand automobiles for some customer of his in order that the sale price might be applied as cash payment on another car.

### Re-Direct Examination.

"On re-direct examination Mr. Stumb testified that the Patterson car (the car in question) was in the garage of Stumb Motor Company for more than ten days before it was advertised for sale. That the automobile was in their garage at the time the replevin warrant was issued and served on J. H. Abernathy."

Tom Carney, witness for plaintiff, testified as follows:

"That he lives in Murfreesboro, Tennessee, and is employed by Byrn Reagor Motor Company there. He was present on February 10, 1928, when Mr. Abernathy came to Byrn Motor Company and took the car which had been stored there by J. R. Patterson. That Mr. Abernathy instructed them to present the storage bill to Dr. Patterson for payment and that if he refused to pay it to charge it to the Stumb Motor Company who would pay it. That he absolutely has no interest in this lawsuit.

### Cross-Examination.

"On cross-examination Mr. Carney testified that he has nothing to do with the books or the bookkeeping at Byrn Reagor Motor Company and that he knows nothing about how the storage account in question was charged on Byrn Reagor's books."

Lewis Bowles, witness for plaintiff, testified as follows:

"That he lives in Murfreesboro and is employed by the Byrn Reagor Motor Company and that he has no interest whatever in this lawsuit. That he and Tom Carney were present at work when Mr. Abernathy called at Byrn Reagor Motor Company and introduced himself as Mr. Abernathy from Stumb Motor Company, and stated that he desired to get the car which Dr. Patterson had left there. That the car was delivered to Mr. Abernathy whom the witness asked who would pay the storage and Mr. Abernathy replied in substance, charge the storage to Dr. Patterson and if he will not pay it when the bill is presented, charge it to Stumb Motor Company and they will pay it. That sometime prior to February 10th, he had pulled the car into their garage at Dr. Patterson's request where it had since remained until called for by Mr. Abernathy. That Dr. Patterson had not instructed them to turn it over to Abernathy.

### Cross-Examination.

"On cross-examination Mr. Bowles testified that he does not have anything to do with the bookkeeping at Byrn Reagor Motor

Company and does not know how this storage charge was entered on their books. That the bill has never been presented to Dr. Patterson or Stumb Motor Company for payment.''

We have copied in full all of the evidence in the case, as it appears in the bill of exceptions.

We do not think the law, when applied to the facts of this case, required the defendant to advertise or sell the car in Rutherford county. The Act of 1889, Chapter 81, provided that the seller, on regaining possession, should advertise the property for sale for cash to the highest bidder ''by printed hand-bills or written or printed notices posted on the door of the courthouse of the county in which said seller resides, and also at two public places in the civil district in which said original purchaser resides.''

But by the amendatory Act of 1911, Chapter 8, the provisions above quoted were stricken from the Act of 1889, and, in lieu thereof, the following were substituted, viz: ''By written or printed posters posted at as many as three public places in the county where the property is to be sold, one of said places to be in the district in which said property is to be sold and one at the courthouse door in the county in which the property is to be sold, and the other or third at any public place in the county.''

The case of Massillon Engine & Thresher Co. v. Wilkes (Tenn. Sup. Court), 82 S. W. 316, cited for plaintiff, was based upon the aforesaid Act of 1889, prior to the amendment of 1911.

In our view of the law, it is immaterial to the issues in this case whether the original contract by which plaintiff purchased the car from defendant was made in Rutherford county or Davidson county. We find nothing in the conditional sales statute which seems to require the seller, on regaining possession, to advertise and sell the property, or to advertise the sale, in the county where the original contract of sale and purchase was made. We see no reason why the conditional purchaser might not remove his residence, or remove the property, or both, to another county in this State without affecting the right of the seller to regain possession of the property and advertise and sell it wherever it may be found in the State.

The testimony of J. H. Abernathy that he took the car into his possession at Murfreesboro and took it to Nashville, where he tried to sell it at private sale for the benefit of plaintiff, pursuant to an agreement between himself and plaintiff, is undisputed.

If such was the purpose for which Patterson took possession of the car, it is immaterial whether he had possession, individually, as agent of plaintiff, or was acting for the defendant Stumb Motor Company.

Plaintiff necessarily knew whether this testimony of Abernathy was true or untrue, and he did not offer to testify. In the case of Citizens Bank v. Langford, 6 Tenn. App. R. 238, the issue was, whether the

defendant Langford's father had authority to sign his (defendant Langford's) name to the note there in suit. In the opinion in that case (at page 243) this court said: "In view of the circumstances disclosed by complainant's proof in the instant case, the failure of the defendant to disclose the facts which he must have known raises an inference which the Chancellor could rightfully consider in determining whether R. F. Langford had authority to sign the defendant's name to the note in question, and which this court may rightfully consider in ascertaining whether there is any evidence reasonably tending to support the finding of the Chancellor, sitting as a jury;" citing Standard Oil Co. v. State, 117 Tenn. 618, 672, 100 S. W. 705; Fisher v. Insurance Co., 124 Tenn. 450, 483, 138 S. W. 316; W. U. Telegraph Co. v. Lamb, 140 Tenn. 107, 111, 203 S. W. 752.

And so, in the light of the record in the instant case, we think the failure of the plaintiff to disclose the relevant facts necessarily within his knowledge raises a presumption that his testimony, if introduced, would have operated to his prejudice, that is, to be more specific, would have corroborated Abernathy's undisputed statement that he had an agreement with plaintiff to take the car to Nashville and make an effort to sell it at private sale for plaintiff.

There is nothing in the testimony of Andrew Stumb, when read in connection with the testimony of J. H. Abernathy, which would support an inference that, on or prior to the day Abernathy brought the car to Nashville, there was an agreement or understanding between plaintiff and defendant that defendant would take possession of the car by virtue of its retention of title and with the intention to exercise its right of foreclosure under the conditional sale contract. The ten-day period for advertising did not begin to run until the defendant took possession "because of the consideration remaining unpaid at maturity." Acts of 1889, Chapter 81 (Shan. Code, sec. 3666); Boyd v. The White Company, 5 Tenn. App. R. 280, 283; 24 R. C. L., p. 494, sec. 787. In the case of Stanley Bird Motor Co. v. Alley, 1 Tenn. App. R. 202, 205, this court (speaking through Judge Crownover) said:

"The plaintiff insists that the car was left with it only for the purpose of helping the defendant resell the car, and not for the purpose of foreclosing under the notes, while the defendant insists that the motor company had taken possession so as to make its money out of the car. It is true that the plaintiff's witness Mr. Bird states he is not positive just what the defendant said when he brought the car to the garage, when the car was brought there, or whether he saw the defendant afterwards and talked to him, but he does state positively that the understanding was that the car was to be left there that the motor company might help the defendant sell it.

"Now, if the car was returned with the understanding that the plaintiff would not take it back on its indebtedness, but would help the defendant try to sell it, this is not 'regaining possession of the property, because the consideration remained unpaid at maturity.' Under the statute it is necessary that the plaintiff advertise the property as provided by the statute within ten days after the seller has regained possession because of the consideration remaining unpaid. If he obtains possession for any other purpose, then the statute does not apply.

"We have had cases before us where a car was returned to the motor company for the purpose of repairs, and not for the purpose of foreclosing on the unpaid notes that retained title to the property, and we held that the statute did not apply, although the motor company had held the car for the repair bill until after the note had matured. Many other instances might be cited, such as where the motor company had sold a car and retained title to secure the payment and the purchaser having stored the car in the motor company's garage. The statute does not apply until the motor company takes possession on account of default in payment at or after maturity. In other words, this statute does not apply where the motor company took possession of the car as bailee for any purpose other than that because the consideration remained unpaid for the purpose of foreclosure. The statute does not apply where the motor company took possession for the purpose of repairs, storage, transportation, etc.''

We find no evidence in the record that the defendant Stumb Motor Company, had, at any time prior to March 21, 1928 (when it replevined the car), elected, or in any manner indicated an intention, to take or hold possession of the automobile in question ''because of the consideration remaining unpaid at maturity,'' or for the purpose of enforcing its rights under the conditional sale contract, and it posted the notices advertising the sale pursuant to the requirements of the conditional sales statute on March 26, 1928.

Our finding just stated is not affected by the testimony of Carney and Bowles (which, for the purposes of this appeal, must be accepted as true) that when Abernathy took the automobile from the garage of the Byrn Reagor Motor Company, at Murfreesboro, he told these witnesses, in substance, that the Stumb Motor Company would stand as security for the storage bill against plaintiff Patterson.

The defendant's assignment that there is no evidence to sustain the finding and judgment of the trial court is sustained and the judgment is reversed and the plaintiff's suit is dismissed.

The costs of the cause, including the costs of the appeal in error, will be adjudged against the plaintiff Patterson.

Crownover and DeWitt, JJ., concur.