B A C Corporation *v.* Francis.

(*Knoxville,* September Term, 1940.)

Opinion filed November 23, 1940.

WHITAKER & WHITAKER and W. W. HAYNES, all of Chattanooga, for plaintiff in error.

WOOD & DIETZEN and CARDINAL WOOLSEY, all of Chattanooga, for defendant in error.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

This action was brought before a magistrate by a purchaser of an automobile on a conditional sale contract, seeking a recovery from the assignee of the contract of the entire purchase money paid, charging in the warrant that, "after default of payment, the plaintiff returned said automobile to the defendant for the express and specific purpose of advertisement and sale as provided for by the conditional sales law [Code, Sections 7287-7291], which defendant failed to do."

The magistrate dismissed plaintiff's action and gave judgment on a cross-action in favor of the defendant corporation for unpaid balance purchase money. The Circuit Court reversed and gave judgment for plaintiff for $163.60 against the assignee corporation, defendant below, which amount was made up of $65 paid to the original seller, and $98.60 collected on the contract by the defendant assignee. The Court of Appeals affirmed. This Court granted *certiorari,* and argument has been heard.

After the decision of the Court of Appeals and pending action on the petition for *certiorari,* this Court decided the case of *Wallis* v. *B A C Corporation,* 175

Tenn., 659, 137 S. W. (2d), 274, and held that the buyer could recover from the assignee under this Section, as modified, only such part of the consideration as had been paid to it. It was obviously necessary, therefore, to grant the writ in this case for the purpose of correcting error in the judgment to the extent, at least, of limiting the recovery to that part of the consideration the defendant had collected, shown to be $98.60. We do not understand counsel for Francis to question that this case is controlled in this regard by the *Wallis Case, supra.*

But petitioner corporation goes further and challenges the decree of the Court of Appeals as erroneous in other respects, insisting that no judgment should have been entered against the corporation, but that, on the other hand, it was entitled to a judgment on its cross-action for the balance unpaid on the conditional sales contract, in the sum of $164.01.

As has been seen, the ground of the action, as succinctly stated in the warrant before the magistrate, was "that after default of payment, the plaintiff returned said automobile to the defendant for the express and specific purpose of advertisement and sale, as provided for by the conditional sales law, which defendant failed to do." A good cause of action was thus stated. Code, Section 7287, provides that "it shall be the duty of said seller, having regained possession of said property *because of the consideration remaining unpaid at maturity,*" (italics ours)—that is, because of "default," as expressed in this warrant—"within ten days after regaining said possession, to advertise said property for sale," etc. And Section 7291 provides that, should the seller fail to advertise within the ten days and sell, the purchaser may recover the entire consideration paid by him.

Now the theory and contention of the plaintiff made on the trial below, consistently with the charge set forth in the warrant, is that the defendant corporation, having regained possession of the car by consent of the buyer "because of the consideration remaining unpaid at maturity," that is, for the purpose of enforcing this claim, failed to advertise the property for sale within ten days after so regaining its possession. The contention for the defendant seller is that the ten day period did not begin to run on the day that it took over possession of this car, because the taking was not "because of the consideration remaining unpaid," and was not for the purpose of enforcement of its rights under its contract of sale, or, as charged in the warrant, "for the purpose of advertisement of sale."

Now it is apparent that the draftsman of this warrant well understood that, in order to recover under the statute invoked, it was essential to show, not only that the defendant had taken the car into possession and failed to advertise it for sale in ten days, but that the purpose in taking repossession was to enforce the balance purchase money debt, or, as expressed in the Code Section invoked, was "because of the consideration remaining unpaid at maturity." The limitation of liability under the drastic terms of this statute (Code, Section 7291) for failure to advertise for sale to those cases where the taking is for this reason and purpose is not only clear on a reasonable construction of the statute, but has been declared in a number of our decisions.

In *Murray* v. *Motor Truck Sales Corp.*, 160 Tenn., 140, 22 S. W. (2d), 227, 228, 23 S. W. (2d), 913, the truck involved, which had been sold on a conditional sale contract, was delivered to the seller for repairs. Comment-

ing on the nature of the possession in that case, as related to this statute, it was said:

"We think the Court of Appeals erred in the conclusion stated. Section 3666, Thompson's-Shannon's Code [now Code, Section 7287], authorizes a sale upon conditions prescribed by a conditional vendor who has 'regained possession of said property because of the consideration remaining unpaid at maturity.' Obviously the vender here acquired possession of the property in no such manner."

The statement of the distinctive nature of the repossession of such property that will bring it within the ten-day sale requirements of this Statute has been enforced by the Court of Appeals in several cases, with emphasis, for example, *Stanley Bird Co.* v. *Alley,* 1 Tenn. App., 202, and *Stumb Motor Co.* v. *Patterson,* 9 Tenn. App., 29, in both of which this Court denied *certiorari,* and *Boyd* v. *White Co.,* 5 Tenn. App., 280.

These cases all hold that the repossession must be for the purpose of enforcement of the claim for balance of purchase money—nor for repairs, as in the *Murray Case, supra,* or for safekeeping, in storage, or otherwise, or for exchange, or private sale, or any purpose other than that of enforcement of the rights of the seller arising out of a default under the conditional sales contract. Obviously, in such situations Sections 7287, 7291, would have no application. The essential element of purpose to enforce a claim for unpaid consideration would be wanting. In *Stumb Motor Co.* v. *Patterson, supra,* the Court of Appeals held that the ten day period for advertising does not begin to run until the seller takes possession *because of the consideration remaining unpaid at maturity;* that the property having been turned over to the seller for a private sale, it was not necessary to adver-

tise it for sale under this statute. This was in line with the previous holding in *Stanley Bird Motor Company* v. *Alley, supra,* that where the purchaser returns the property to the seller for a resale, the ten-day requirement did not apply. So, in *Boyd* v. *White Co., supra,* where the purchaser after default, abandoned the property and left for parts unknown, and the seller took possession for the purpose of protecting his security (a situation somewhat similar on its facts to the instant case), it was held that, the repossession not being because of the default and for the purpose of enforcing the lien, the seller was not liable for failure to advertise within ten days.

Running through these decisions is a clear recognition that the drastic remedy provided by this statute does not apply, unless it appears that the seller has regained possession of the property "because of the consideration remaining unpaid at maturity," that is, for the purpose of enforcing the contract to satisfy the balance unpaid thereon. And this is the general rule. See 24 R. C. L., p. 494, and cases there cited from other jurisdictions.

Now, with these principles in mind, we examine the facts of the instant case. It appears that on April 21st, without any previous complaint or demand having been made by defendant, although the purchaser had fallen behind with his payments, a relative of the buyer, his mother, telephoned a representative of the defendant that the buyer had left the State and asked the defendant to come or send for this car. In response to this call, the defendant sent one Dan Anderson, a garage operator, who brought the car to his garage and there held it in safe keeping. The buyer, T. N. Francis, returned in a day or two and was thereafter interviewed by a representative of defendant and requested to execute a waiver,

provided for by the statute, of advertisement, etc., this waiver reciting that there had been a default and the car had been delivered to the buyer, etc., and that to save expense, etc., the statutory sale requirements were waived, and the car might be sold at public or private sale. This the buyer declined to do, giving no reason, and expressing no wishes as to the car, so far as this record shows.

Thereupon, apparently conscious of not having acquired possession of the car in either of the two lawful ways, if the repossession is for enforcement of a conditional sale debt, that is, by "process of law (by replevin usually) or by agreement of the parties," (*Murry* v. *Motor Corporation, supra*), the defendant proceeded to replevin the car, then stored at the Anderson Garage, and having taken judgment under this writ, thereafter advertised and sold the car. The replevin writ was issued May 2nd and judgment entered thereon May 4th. The advertisement of sale was posted on May 9th following, and the car sold.

Counsel for both parties devote much argument to the effect of this replevin proceeding, contending for the plaintiff that it was invalid because issued without a bond, and relied on for the defendant as *res adjudicata* of the question of date of repossession, in the sense of requiring advertisement to be begun within ten days. We do not regard this question as decisive. As heretofore shown, plaintiff can recover in an action on the statute for failing to advertise within ten days, only upon establishing that when the defendant repossessed the car in the plaintiff's absence, it was because he was in default *and for the purpose of foreclosure.* If this is established, and it being conceded that this repossesssion occurred on the 21st of April and no advertisement was posted

until May 9th, the case for a recovery is made out. No subsequent proceeding in replevin could save the defendant from the statutory liability. If, on the other hand, plaintiff has failed to show that the defendant lawfully repossessed the property on April 21st for this specific purpose, then his suit fails. As has been seen, he charges in his warrant that he, "returned said automobile to defendant for the express and specific purpose of advertisement and sale." Now, there is no suggestion that plaintiff ever personally had any understanding, or, indeed, any communication whatever on this subject with the defendant. His case rests largely on the communication which his mother had by telephone with defendant's agent. She testified that she called the defendant B A C Corporation over the telephone and told the person who answered, that "my son had lost his job and that he was in North Carolina, I think it was Asheville. Anyway, that he was out of a job and to come and get the car." She further testified on cross-examination:

"X. 1. Mrs. Francis, you did tell them that Mr. Francis was out of town? A. I did.

"X. 2. And that they would have to wait until he came back, something to that effect? A. I told them he was out of town, to come and get the car.

"X. 3. Did you tell them he would be back? A. Sure he would be back, but I did not tell them when he would be back. I did not know when he would be back.

"X. 4. You did indicate to them that he would have something to do with them when he got back. A. No. I told them he was out of a job, to come and get the car.

"X. 5. Did you say anything to them about his coming down to see them when he got back? A. I told them he was out of a job. He said he was sorry he was out of a job."

She did not testify that she had been directed by her son to call the Company and she did not tell the representative that she was acting by her son's direction or authority.

Of course, there is nothing whatever in this testimony to establish any agreement or arrangement or plan on defendant's part to repossess this car because of default in payments on the purchase price, or for, or with the purpose of, advertisement and sale. The most that can fairly be deduced therefrom is that the mother of this young man voluntarily called upon the defendant to take charge of the car in the absence of her son, leaving open the matter of permanent disposition.

After testifying to his purchase, the terms and payments made by him, and that he had lost his job and fallen somewhat behind in his payments, but giving no suggestion that he had been pressed by defendant, or that any demand had been made on him for repossession of the car, the plaintiff proceeded:

"Q. 14. When you failed to pay, or got out of a job, did you or any one notify the B A C Corporation that you could not make further payments and authorize them to take the car back? A. My mother did.

"Q. 15. Did you authorize her to do that? A. No, sir."

(As has been seen, his mother did not notify the defendant that the plaintiff "could not make further payments.")

"Q. 16. Do you know what date you authorized her to notify them? A. The night of the 19th.

"Q. 17. The 19th of what month? A. April.

"Q. 18. Of this year? A. Yes, sir.

"Q. 19. April 19th, 1938? A. Yes, sir.

"Q. 20. Do you know when they came after the car? A. Well, she said they come the 21st.

"Q. 21. Were you in town when they came? A. No, sir.

"Q. 22. When did you get back to town? A. I got back on the 22nd.

"Q. 23. When you got back to town on the 22nd, was the car gone? A. Yes, sir.

"Q. 24. That was on April 22, 1938? A. Yes, sir.

"Q. 25. Now, did you authorize this Company, or have any understanding with this Company, so far as you know, that they were to take this car and hold it some-time before they advertised it and sold it; or were they to take it absolutely, so far as you knew? A. Well, they just taken the car.

"Q. 26. They just took the car? A. Yes, sir.

"Q. 27. And when did you next see the car? A. Well, I seen it about a week later.

"Q. 28. Where was the car when you saw it? A. Out at Dan Anderson's garage.

"Q. 29. Did you put the car in Dan Anderson's garage? A. No, sir.

"Q. 30. Did you authorize any one else to put the car in Dan Anderson's garage? A. No, sir."

This is all the witness had to say as to the circumstances of the taking of the car. On cross-examination he says that a representative of the defendant saw him after his return, which was within a few days, and asked him to execute a waiver, which he declined to do. He does not explain what his wish or expectation was as to the car, nor intimate that he made any request of, or demand on the defendant. Indeed, his attitude as one of washing his hands of the whole matter, of indifference and unconcern.

We search this testimony in vain for any support whatever of the allegation in the warrant of an express and specific purpose, agreement or understanding in connection with the transaction. There is no evidence whatever that it was the desire of the defendant when it took over the possession to subject the car to sale for the balance purchase money, or that it took the steps taken for this purpose. There is not even ground for the presumption of a purpose to foreclose that might arise from the unsuggested initiation by a seller holding a defaulted contract of proceedings for repossession. Here the repossession was prompted and suggested by one assuming to act for the buyer. As said by Judge Faw in his opinion in *Stumb Motor Co.* v. *Patterson, supra,* "We find no evidence in the record that the defendant Stumb Motor Company, had, at any time . . . elected, or in any manner indicated an intention, to take or hold possession of the automobile in question 'because of the consideration remaining unpaid at maturity,' or for the purpose of enforcing its rights under the conditional sale contract;" and it was held that the ten-day period for advertisement prescribed by the statute did not begin to run until the defendant took possession for this specific purpose.

It is apparent from the statement made by the trial Judge that he did not give consideration to the distinction hereinbefore pointed out, between a repossession because of default and for the purpose of enforcement of a claim for unpaid purchase money, and a repossession without a showing of such purpose. The Court of Appeals apparently assumes that this was the purpose of the repossession and therefor relates the transaction to the statute, and, finding that its provisions were not strictly complied with, gives the plaintiff a recovery.

The opinion of the Court of Appeals is directed, first, to a refusal to consider the counterclaim of the defendant, because of the failure of the transcript to show any pleadings to sustain such a cross-action; second, to an overruling of the contention that this assignee is not liable for that portion of the purchase-money which had been paid to the original seller, holding "the contract is inseparable," etc., which has been otherwise ruled by this Court; third, to a discussion of the validity and effect of the replevin proceeding, holding it to be ineffective to toll the running of the ten-day requirement for advertising, which was assumed to date from the repossession by the seller on April 21st; and, finally, to the holding that the proof failed to establish that the statute was strictly complied with in the posting of the sale notices in three public places.

As before indicated, we are unable to find any evidence that this car was repossessed by the defendant, "because of the consideration remaining unpaid at maturity." Therefore, the provisions of the statute as to advertisement within ten days, etc., are inapplicable, and the remedy therein provided of a recovery of the purchase money is not available to plaintiff.

In this view, it becomes unnecessary to discuss questions growing out of the replevin proceedings, or as to strict compliance with the statute in the posting of the notices of sale. There is no charge that the plaintiff did not have actual notice of the sale, or that the sale was unfairly conducted, or that a fair price was not realized. The sole ground of the relief sought is the failure to comply strictly with the provisions of this statute, which we hold to be without application under the facts of this case.

We find no error in the holding of the Court of Appeals that the transcript fails to support a cross-action. The judgment of the Court of Appeals awarding a recovery to the plaintiff below is reversed and the suit dismissed.