R. L. JUDD and N. C. JUDD, d/b/a JUDD PRODUCE
COMPANY, v. FRUEHAUF TRAILER COMPANY,
INC.—293 S. W. (2d) 591.

Middle Section. June 29, 1956.

Petition for Certiorari denied by Supreme Court, September 3, 1956.

Jack Green, Melvin Butler, Steve Bowers, Nashville, for plaintiff.

J. Connelly Edwards, Nashville, for defendant.

SHRIVER, J. The parties will be referred to as they appeared in the Court below.

## I

This is a suit to recover the sum of $6,705.92, paid by the plaintiffs as a part of the purchase price of a certain refrigerated trailer bought by them under a conditional sales contract and wherein it is alleged that the defendant, after repossessing said trailer, failed to advertise and sell same as required by section 7287 Williams' Ann. Code, Sec. 47-1302, Tenn. Code Ann., thus becoming

liable to them under the provisions of the act, sec. 7291, Williams' Ann. Code, Sec. 47-1306, Tenn. Code Ann.

Issue was joined and the case was heard on November 22, 1955 before Hon. E. F. Langford, Judge of the Third Circuit Court of Davidson County, Tenn., without the intervention of a jury and resulted in a dismissal of plaintiffs' suit at the conclusion of all the evidence.

A motion for a new trial was made and overruled and the cause appealed to this Court in due course.

In the plaintiffs' brief and assignments the facts are stated as follows:

"Plaintiffs, N. C. and R. L. Judd, are father and son, respectively, and are engaged in the business of transporting frozen foods under contract, for which business the use of refrigerated trailers or vans is required.

"Plaintiff, N. C. Judd, (as an individual) purchased a trailer from the defendant in 1952. We are not concerned with this unit except insofar as it may tend to show the intention of the parties. On July 3, 1953, plaintiffs, under the name of Judd Produce Company, purchased under conditioned sales contract, (same is Ex., No. 1 to N. C. Judd's testimony), one (1) new Fruehauf Stainless Steel Refrigerated Van, for which they paid the sum of $2,223.60 cash, leaving a time-balance of $13,216.21 which safe was due in eighteen monthly installments of $367.11 each (see Ex. No. 1). A total of $6,705.92 was paid on the contract.

It seems that on at least two or three occasions, the Judds became delinquent on both contracts,

especially in 1954, but on each occasion satisfactory financial arrangements were made and the Judds continued in their business until January 10, 1955, at which time defendant wrote plaintiff N. C. Judd (see Ex. No. 3, testimony of N. C. Judd), advising them that three payments were delinquent and required them to place both trailers on the lot on or before January 14, 1955. The notice was signed by M. Reuben Cline, Office Manager.

"In response to this notice, plaintiff R. L. Judd, on Saturday, January 15, 1955, went to the office of defendant, where he was told to bring in the Judd Produce trailer within two hours (P. 40, Bill of Exceptions). This he did and the following Monday, January 17, 1955, both N. C. and R. L. Judd went to defendant's office and attempted to adjust the delinquency but failed to reach an understanding and were also told to bring the personal trailer of N. C. Judd to the defendant's lot. This trailer was not returned to defendant until Friday, January 21, during which time the Judds tried to raise the sum demanded, but were unable to do so. (Bill of Exceptions, P. 14.) Some uneventful conversations followed, and on January 27, 1955 N. C. Judd succeeded in refinancing his personal trailer through the Broadway Discount Corporation and this trailer was returned to him, leaving the Judd Produce trailer in the possession of the defendant (Bill of Exceptions, P. 15). According to both Judds, all negotiations regarding both trailers closed at this time, but Mr. Reuben Cline testified that some conversations were had regarding the Judd Produce trailer after this date, the last taking place on or about February 15,

1955 (Bill of Exceptions, P. 63), and the Court found that all such negotiations ended in February, 1955 Bill of Exceptions, P. 81). No waiver was signed nor was there any contract, agreement, or understanding between the parties regarding the plaintiff paying out or redeeming the Judd Produce trailer, nor was the possession of same by the defendant controverted and defendant continued to hold the Judd Produce trailer. Finally, on April 27, 1955, attorney for plaintiff, Jack Green, wrote defendant, calling its attention to the fact it had not complied with Section 7287, Williams' Tennessee Code (47-1302 Tennessee Code Annotated) and that under Section 7291 (47-1306) of said Code it was liable and demanded the money paid defendant under the contract (see Stipulation, P. 1). On May 6, 1955, defendant answered this latter stating they had the trailer for *safekeeping* and that unless they heard from the Judds by May 16, 1955, they would consider the trailer repossessed (see P. 2, Stipulation).

"On May 24, 1955, M. Reuben Cline, Manager, Fruehauf Trailer Company, wrote N. C. and/or R. L. Judd, informing them that a sale would take place June 6, 1955, on the Company lot at 650 Murfreesboro Road (see Ex. No. 2, Testimony of N. C. Judd).

"At the time of the sale, there was due and unpaid the sum of $8,733.89 and the trailer was sold for $9,100.00.

"Suit was filed May 18, 1955, and the case was tried before the Honorable E. F. Langford, Judge, without the intervention of a jury, Tuesday, Novem-

ber 22, 1955. At the close of all the proof, the Court dismissed plaintiff's suit. In short, the facts and dates may be summarized as follows:

January 19, 1955—Notice to Judds to bring trailer to lot;

January 15, 1955—First trailer surrendered;

January 17, 1955—Judd informed he must surrender personal trailer;

January 21, 1955—Judd surrendered personal trailer;

January 27, 1955—Personal trailer refinanced by Broadway Discount Corporation;

April 27, 1955—Letter by Jack Green to Fruehauf Trailer demanding payment;

May 6, 1955—Defendant answers Green's letter;

May 18, 1955—Suit filed;

May 24, 1955—Letter to Judds notifying them of sale;

June 6, 1955—Trailer sold for $9,100.00.''

There are very few material facts in dispute. It is pointed out, however, by counsel for the defendant, that in June or July 1954, the office manager of defendant called the plaintiffs and asked what they were going to do about the payments on the trailers that were delinquent and, according to Mr. Cline's testimony, they replied that they were not hauling anything much at the time, and that the trailers were just standing on a lot. Thereupon Mr. Cline requested that they be brought and parked on the premises of the Fruehauf Trailer Company in order that same might be protected while plaintiffs were attempting to refinance them or bring the payments up to date. The request was complied with.

Within a few days thereafter N. C. Judd went to the place of business of the trailer company and informed Mr. Cline that he had a profitable contract and wanted to get the trailer out, and permission was granted him to do so.

It is pointed out by counsel for defendant that, during all this time, plaintiffs did not have a lot of their own on which to park the trailers, but that they kept them parked elsewhere. In January 1955 the payments were still delinquent and Mr. Cline called and asked plaintiffs what they were going to do about bringing them up to date. Mr. Cline states that plaintiffs replied that they were not hauling anything much at the time, that the trailers were just standing on a lot, whereupon, he asked that they bring the trailers and park them on the premises of the defendant on the Murfreesboro Road, just as they had done before, while they were attempting to make arrangements for refinancing or bringing the payments up to date. This was done and the trailer in question was placed on the property of the defendant on January 15th, 1955.

It seems not to be disputed that after the trailer involved here and the personal trailer of Mr. N. C. Judd were put on the lot of the defendant, some conversations followed and efforts were made by the plaintiffs to refinance both trailers. On January 27, 1955, Mr. N. C. Judd succeeded in refinancing his personal trailer through the Broadway Discount Corporation, and regained possession of same, leaving the Judd Produce trailer on the lot of the defendant.

Plaintiffs say that negotiations regarding the financing of the Judd Produce trailer ceased at this time. How-

ever, it appears that other negotiations followed. It is insisted by plaintiffs that, certainly, all negotiations ended in February 1955, whereas, advertisement of sale was not begun until May 24, 1955.

## II

There are five assignments of error, but it is not necessary to deal with them separately.

The sole question for determination is, whether or not the defendant so failed to comply with the Conditional Sales Act of Tenn., as to render it liable to the plaintiffs under Sec. 7291 of the Code. (Williams Ann.)

Sec. 7287 Williams Ann. Code provides that when any personal property is sold on condition that the title remain in the seller, it shall be the duty of the seller, having regained possession of said property because of the consideration remaining unpaid at maturity, within ten days after regaining such possession, to advertise said property for sale to the highest bidder, by written or printed posters posted at as many as three public places, etc., said notices to be posted at least ten days before the day of sale.

Sec. 7291, Williams Ann. Code is as follows:

"*Purchaser may recover payments on failure to sell.*—Should the seller or assignee, having regained possession of said property, fail to advertise and sell the same as provided by this article (unless said sale is waived as provided), the original purchaser may recover from said seller or assignee that part of the consideration paid to him, in an action for the same before any justice of the peace or court having jurisdiction of the amount."

## III

 It is the position of the plaintiffs that, after the trailer in question was put on the lot of the defendant, all negotiations in regard to refinancing same ceased on January 27, 1955, and that plaintiffs did not again contact defendant until April 27, 1955, when plaintiff's attorney notified the defendant by letter that defendant had not complied with the conditional sales law and demanded repayment of the purchase money within seven days of that time.

We find that negotiations did not cease on January 27, 1955 but were continued for some time after that, at least until about the middle of February of 1955.

Of course the question arises as to when the defendant was under the duty of beginning advertisement of sale of this trailer under the facts shown here.

While defendant could have taken the position that it had regained possession of the trailer on January 15, 1955 for the purpose of enforcing the terms of its contract, and it might have advertised same for sale immediately, it seems that the course of dealing that had been followed by these parties on previous occasions justifies the conclusion that it was not the purpose and intention of the defendant to have the trailers put on its lot for immediate enforcement of the conditional sales contract by advertisement and sale.

The record shows without dispute that, after the trailers were placed on this lot, negotiations did ensue looking to the refinancing of same, and it seems to the Court that the defendant company should not be penalized for extending the time and endeavoring to cooperate with

the plaintiffs in an effort to save their trailers for them, and this was the view that the trial court took.

The record is clear that neither the plaintiffs nor the defendant considered that the repossession, or the placing of this trailer on the defendant's lot, was for the purpose of an immediate enforcement of the claim for the balance of the purchase money. On the other hand, it was understood by plaintiffs and defendant that both trailers were placed there pending negotiations for refinancing, as was demonstrated by the fact that one of the trailers was later refinanced and released. Thus, we cannot say that the time for advertising under the statute, began immediately upon the placing of this trailer on the lot of the defendant.

Also it seems to us that, even though active negotiations for refinancing were not carried on after the middle of February, nevertheless, it does appear that the defendant was indulging the plaintiffs with the hope that they could catch up the delinquent installments or refinance the trailer and save the amount that they had put into it, otherwise, there was nothing to have kept the defendant from beginning advertising at any time that it chose.

We cannot say from this record, that the defendant was undertaking, in any wise, to impose on the plaintiffs or to take advantage of them, or to try to sell the trailer secretly without complying with the Conditional Sales Act.

The law was enacted for the protection of the purchaser of goods, and it seems to us that, in equity and good conscience, the defendant should not be penalized for undertaking to afford the plaintiffs even more protection than the law required.

In Kidd v. Condry, 25 Tenn. App. 182, 154 S. W. (2d) 530, 534, it was said:

" 'Section 7291 was designed for the protection of the conditional vendee. Its purpose was to compel a fair and public sale of the goods retaken by the conditional vendor, to prevent the latter from appropriating the property or disposing of it secretly.' "

We do not believe that the position taken by the trial Court is in conflict with the holding in International Harvester Co. v. Farmer, 174 Tenn. 88, 123 S. W. (2d) 1089.

We think the case B. A. C. Corp v. Francis, 176 Tenn. 648, 144 S. W. (2d) 1098, 1100, is in point.

In that case the Court said:

"These cases all hold that the repossession must be for the purpose of enforcement of the claim for balance of purchase money—not for repairs, as in the Murray case, supra [Murray v. Federal Motor Truck Sales Corp., 160 Tenn. 140, 22 S. W. (2d) 277, 23 S. W. (2d) 913], or for safekeeping, in storage, or otherwise, or for exchange, or private sale, or any purpose other than that of enforcement of the rights of the seller arising out of a default under the conditional sales contract."

It results that the judgment of the trial Court is affirmed.

Affirmed.

Felts and Hickerson, JJ., concur.