FRANCIS JOHN TEDESCO, JR., Appellant, v. GEN-
ERAL MOTORS ACCEPTANCE CORP., Appellee.—
326 S. W. (2d) 837.

Western Section.   August 27, 1958.

Certiorari Denied by Supreme Court December 12, 1958.

Rehearing Denied by Supreme Court March 12, 1959.

176

James T. Sanderson, Memphis, for appellant.

William F. Kirsch, Jr., Ernest Williams, III, Shepherd, Heiskell, Williams, Beal & Wall, Memphis, for appellee.

CARNEY, J. The appellee, General Motors Acceptance Corporation, has filed a motion to dismiss the appeal of Mr. Tedesco on the ground that the assignment of errors was not filed with the Clerk of this court within twenty-five days after the transcript of the record had been filed as required by Rule 11 of this court. The transcript was filed on May 1, 1958, and the assignment of errors was filed on June 11, 1958.

No prejudice accrued to the appellee because of appellant's failure to file the assignment of errors within the prescribed time. The attorney for appellant stated in open court that this was the first appeal that he had ever perfected to this court. Under all the circumstances we feel that we should hear the appeal upon its merits and therefore, the motion of appellee to dismiss the appeal will be respectfully overruled.

Appellant, Francis John Tedesco, Jr., brought suit in the Circuit Court of Shelby County, Tennessee, against the appellee, General Motors Acceptance Corporation, seeking to recover $1614.55 which had been paid by him on the purchase price of a 1954 Oldsmobile under an instalment conditional sales contract. The automobile was purchased originally from Southern Motors, Incorporated, of Memphis, Tennessee, and the conditional sales contract was assigned by Southern Motors, Incorporated to General Motors Acceptance Corporation.

Plaintiff, Tedesco, sought to recover under the authority of T. C. A. sec. 47-1306, alleging that General Motors Acceptance Corporation failed to advertise and sell said

automobile at public sale as required by T. C. A. sec. 47-1302.

We copy Sections 47-1302 and 47-1306 as follows:

"47-1302. Failure to pay purchase money when title retained — Repossession — Advertisement and sale of chattel—Waiver of sale.—When any personal property is so sold upon condition that the title remain in the seller, it shall be the duty of said seller, having regained possession of said property because of the consideration remaining unpaid at maturity, within ten (10) days after regaining said possession, to advertise said property for sale for cash, to the highest bidder, by written or printed posters posted at as many as three (3) public places in the county where the property is to be sold, one (1) of said places to be in the civil district in which said property is to be sold, one (1) at the courthouse door in the county, and the third at any public place in the county, said notices to be posted at least ten (10) days before the day of sale, and to contain a description of the property to be sold, and time and place of said sale. Unless the debt is satisfied before the day of sale, then it shall be the duty of said original seller, or his assignee or agent, at the time and place as stated in said notices, to offer for sale, and sell, said property, as provided above, and, with the proceeds of said sale, satisfy the amount of his claim arising from said conditional sale above mentioned, and the expenses of advertisement, if any, and the remainder of said proceeds, if any, he shall pay over to the original purchaser; but the original seller, or his assignee, and purchaser, may at any time, by

agreement in writing, entered into after default, waive the sale provided for in this section. (Acts 1889, ch. 81, sec. 1; 1911, ch. 8, sec. 1; Shan., sec. 3666; mod. Code 1932, sec. 7287.)''

''47-1306. Purchaser may recover payments on failure to sell.—Should the seller or assignee, having regained possession of said property, fail to advertise and sell the same as provided by this chapter (unless said sale is waived as provided), the original purchaser may recover from said seller or assignee that part of the consideration paid to him, in an action for the same before any justice of the peace or court having jurisdiction of the amount. (Acts 1889, ch. 81, sec. 4; Shan., sec. 3669; Code 1932, sec. 7291.)''

The defendant contended that it had an agreement in writing signed by the plaintiff waiving a public sale and authorizing a private sale of the automobile.

Judge Harry Adams heard the case without a jury and ruled adversely to the plaintiff, Tedesco, who has brought this appeal.

The facts are uncontroverted. Mr. Tedesco was having domestic troubles as well as financial troubles and from time to time was in default in the payment of the monthly instalments on his automobile note. The conditional sales contract was executed August 20, 1954, and plaintiff, Tedesco, was required to make monthly payments of $96.75 each.

At Mr. Tedesco's request the monthly payments were reduced in July, 1955, from $96.75 per month to $76.15 per month. He still had difficulty making the reduced

payments. In February, 1956, he requested and was granted an extension of 60 days.

He failed to make the payment due on May 2, 1956, and on June 14, 1956, gave a check to cover the May and June, 1956, instalments. This check was returned by the bank marked "insufficient funds".

On June 25, 1956, an agent of General Motors Acceptance Corporation called on Mr. Tedesco at his place of business and made demand for payment of the past-due instalments. Mr. Tedesco was unable to make the payments and delivered the automobile to the agent along with a written waiver of advertisement and sale.

The waiver was in the form of a mimeographed letter addressed to the General Motors Acceptance Corporation with blank spaces left to be filled in with appropriate information. We copy said completed letter as follows:

"F. J. Tedesco
3442457

"It is understood that I have until July 2, 1956 to redeem the car described below by bringing the account up to date.

"Ted Tedesco                    Date 6/25/56, 1956

"General Motors Acceptance Corporation

"Gentlemen:

"On the 20 day of August, 1954, I purchased of Southern Motors, Inc. (dealer), one 1954 Oldsmobile automobile, Model Hol Cpe, Motor No. 275405, Manufacturer's Serial No. 548A12587, under the terms of a conditional sale contract.

"There is a balance of $1563.00, unpaid, as provided by said contract, which is now owned and held by you.

"I am voluntarily returning said automobile to you and do hereby expressly waive the necessity of advertisement and sale of same under the Conditional Sale Laws of Tennessee. This waiver is made after default in payment of the consideration therefor and after reclamation of the car by you.

"I do hereby agree that you may sell said automobile at either public or private sale, crediting me with the net proceeds of the sale, and I shall be liable to you for any deficiency. On the other hand, you shall account to me for any excess realized by said sale.

"(Signed)                 Ted Tedesco

(Signature of Purchaser)

"Witness:

"/s/   C. L. McKee
                 ,"

The restrictive statement "It is understood that I have until July 2, 1956 to redeem the car described below by bringing the account up to date /s/ Ted Tedesco" was written in longhand in pen and ink at the top of the mimeographed letter copied above.

General Motors Acceptance Corporation took the automobile to the place of business of Southern Motors, Inc. as was its custom in foreclosure cases. An attorney for Mr. Tedesco asked for and was granted orally an extension of time until July 10, 1956, in which to redeem the automobile by paying up all of the delinquent instalments.

The payments were not made on or before July 10, 1956; on July 17, 1956, without notice to Mr. Tedesco and without advertisement, the automobile was sold privately by Southern Motors to a wholesale buyer for $1300.

On July 24, 1956, Mr. Tedesco called the office of General Motors Acceptance Corporation and offered to pay the delinquent instalments and was informed that the automobile had been sold privately.

It was the contention of Mr. Tedesco in the trial below that the waiver of advertisement and sale contained in the letter signed on June 25, 1956, could not be relied upon by General Motors Acceptance Corporation in this action because the contemporaneous agreement giving him until July 2, 1956, in which to redeem the automobile constituted an extension of time for the payment of the delinquencies; hence the waiver was not signed after default as required by T. C. A. sec. 47-1302.

His Honor the Trial Judge found as follows on this question:

"The Court: Without going into detail in this short opinion, or judgment, in view of the fact we have so many attorneys waiting here and litigants, I have come to the conclusion that this car was surrendered and repossessed on June 25, 1956, and that as an accommodation to Mr. Tedesco they were going to allow him until July 2nd, which was extended to July 10th, to redeem the car described below by bringing the account up to date.

"I think the defendant never did have any other idea but that after the car was surrendered they

could regard it as a repossession and go ahead and sell the car at private sale, which they had a right to do.

"But instead of that, in order to help Mr. Tedesco out, they decided they were going to give him the right to redeem the car, which he never did do.

"I think the Thurman case presented by Mr. Sanderson is not in line with the case at bar because that was for the purpose of storage and subsequent repossession. This was a surrender of the property, and it is the Court's opinion that judgment should be entered for the defendant.

"Mr. Sanderson: Note an exception to the ruling of the Court."

The testimony of Mr. McKee, representative of General Motors Acceptance Corporation, relating to the circumstances under which he received the automobile from Mr. Tedesco is as follows:

"Q. What did Mr. Tedesco tell you at that time as to his ability to pay the delinquent payments? A. Well Mr. Tedesco told me when I was there that he could not meet the payments, that he and his wife were in the process of getting a divorce, and all of his money was tied up, and he told me that he just did not have any money at the present time, and possibly in a week that he thought that everything would be cleared out or he could pay it. I told him that I did not have any other alternative but to foreclose on the lien since he was so far in arrears in his account.

"Q. What did Mr. Tedesco say as to that? A. He said he would not let me have the car, and I said, 'I am sorry to hear that, it leaves me no other choice but to replevin the car', and he said, 'I don't want you to take it.' Finally we reached an agreement whereby—or in other words, the agreement was that we would put the car in storage and that he would have the right to redeem the repossessed car on July 2nd, and of course I stated to him we would still foreclose on the car, but we would hold the car for him until July 2nd.

"Q. I will ask you to identify this paper, please. What is that instrument? A. That is a voluntary surrender, dated June 25th, by Mr. Kirsch.

"Q. Will you make that Exhibit 1 to your testimony? A. Yes, sir.

\* \* \* \* \* \*

"Q. You state that after June 25th you took this automobile to Southern Motors? A. That's right.

"Q. Was that part of the agreement with Mr. Tedesco? A. My agreement with Mr. Tedesco was that I would see that the car was not sold until after July 2nd. In other words, I told him that I would take it over and I would not hold a public or private sale until after July 2nd. I told him that any reply he had to make after our conversation would have to be with our office, but that that was the agreement.

"Q. The substance of your agreement was you would keep the car for his redemption to a certain

time? A. In consideration of his releasing the car to me.

"Q. And he was to bring the account up and pay the two back payments? A. Yes, sir.

"Q. At that time you said he was in default on two instalment payments under the contract? A. That's right.

"Q. I believe you state he missed the 2nd of May and the 2nd of June? A. Yes, sir.

"Q. Will you check? That is the exact date on that? A. Yes, sir.

"Q. What you were doing was extending from June 2nd to July 2nd? A. No, sir.

"Q. The due dates under the contract were the 2nd of each month? A. That is correct.

"Q. You stated he was in default on the May 2nd payment and on the June 2nd payment, and you approached him on the 25th of June, 1956? A. That's right.

"Q. And you gave him until the 2nd of July to make good all three payments and thereby redeem his car? A. That's right.

"Mr. Sanderson: I believe that's all."

Also from the testimony of Mr. J. S. Cavanaugh, Jr., a district representative of General Motors Acceptance Corporation, who handled the account of Mr. Tedesco in the office, we quote as follows:

"Q. What were your duties, generally speaking, in June, 1956? A. Handling retail accounts from the office, as well as wholesale.

"Q. Did you have occasion to handle the account of the plaintiff, Mr. Ted Tedesco, on a 1954 Oldsmobile? A. Yes, I did.

"Q. When was your first contact with the car? A. My first contact was on the 26th of June 1956.

"Q. What was the occasion? A. Mr. Sanderson called me asking for the status of the account. He stated that Mr. Tedesco, his client, had contacted him for a legal explanation of the situation, and I explained to him the details under which we repossessed the automobile.

"Q. What did you advise Mr. Sanderson at the time? A. I advised him we had on the 25th of June taken possession of the automobile, and the customer had signed a paper agreeing to it. However, there was a clause inserted in the form granting him about 10 days or until about the 2nd of July in which to pay the account to date to redeem the collateral.

"Q. When did you next have anything to do with the account? A. Either later that day or a day or so afterwards, I am not positive on the point, Mr. Sanderson called me again asking that we extend the redemption period from the 2nd of July to the 10th, and I told him we would be agreeable.

"Q. For what reason did Mr. Sanderson want the extension granted? A. I don't recall but there was the possibility he would have the money by that date.

"Q. Did you have any further conversation after that date with either Mr. Sanderson or Mr. Tedesco? A. Yes, sir. On the 24th of July Mr. Tedesco called.

"Q. You had no conversation between the 26th or 27th of June until the 24th of July? A. No, I did not.

"Q. All right. A. On the 24th of July Mr. Tedesco called and asked could he pay a note that date and take the car. I explained to him I did not know whether or not Southern Motors Company had disposed of the vehicle, and informed him I would check with Southern Motors Company, and had they not disposed of the collateral we would be agreeable to his paying the account to date. We hung up, and I called Southern Motors and found they had disposed of the collateral, and I called back and explained what had happened. The car had been sold.

"Q. Was that your last contact with this matter? A. No, sir. On the 26th of June Mr. Sanderson called me up, and I told him that we had granted Mr. Tedesco until the 2nd of July to pay the account up, and that he had voluntarily brought the car in and had signed an agreement to that effect.

"Q. Was anything further said about paying up the account in the meantime? A. No, sir.

"Mr. Kirsch: That's all."

In the case of Brooks v. Range Motor Co., 16 Tenn. App. 209, 64 S. W. (2d) 42, our Court held that where the conditional seller held an automobile with the buyer's consent until a certain date in order to give the buyer an opportunity to redeem the automobile, the seller had no right to advertise the automobile for sale during this period of time and hence was not liable under the conditional sales law for failure to advertise and sell said automobile as provided by the conditional sales law.

Also in the case of Judd v. Fruehauf Trailer Co., Inc., 41 Tenn. App. 336, 293 S. W. (2d) 591, the Court of Appeals, Middle Section, opinion by Judge Shriver held that where the conditional seller asked buyer who was in default to bring the property to seller's lot pending negotiations for redemption and refinancing by buyer, that the seller had not regained possession for purpose of immediate enforcement of seller's claim and hence was not liable under Section 7287 Williams Code, T. C. A. sec. 47-1302, for failure to advertise for sale within 10 days of regaining possession.

In the case of Therman Thompson v. Associates Discount Corp., in an unreported opinion of this court by the late Hu C. Anderson, presiding judge, filed of date February 18, 1953, on appeal from the Circuit Court of Shelby County, Tennessee, the conditional vendee of an automobile under circumstances similar to the case at bar surrendered his automobile to the discount company and contemporaneously executed a written waiver relieving the discount company of the obligation of advertisement and public sale as required under the conditional sales law.

The agent of the discount company who received the automobile gave the conditional vendee a receipt couched in the following language: ''Received of Therman Thompson one 1948 Sta Wag. Motor # 50349455 for storage until March 1st and subsequent re-possession if the account is not brought to current basis.''

The vendee failed to pay the amount he was in arrears on or before March 1, 1950. On March 2, 1950, the Discount Company, relying upon the written waiver sold the

vehicle at a private sale without advertisement to the Bluff City Motor Company.

In the Therman Thompson case the Circuit Judge awarded judgment against the vendee for a deficiency in the amount of $627.04. The Circuit Judge dismissed a cross-action by the vendee Thompson who sought to recover the amount paid by him on the contract because of the failure of the finance company to advertise the automobile for sale as required by the conditional sales law found in Williams Code 7287, T. C. A. sec. 47-1302.

On appeal this court, in the opinion by Judge Anderson, reversed the action of the Trial Judge and set aside the deficiency judgment against the conditional vendee. From said opinion we quote as follows:

"The policy of the statute does not permit a waiver of the advertisement and sale required by Code Section 7287 to be contained in the contract of sale, nor may such a waiver be made until after the default by the purchaser and reclamation of the property by the vendor. Ward v. Sharp[e], supra [139 Tenn. 347, 200 S. W. 974]; Mitchell v. Automobile Sales Co., supra [161 Tenn. 1, 28 S. W. (2d) 51].

"The execution of the waiver, the surrender of the possession of the car, and the execution and delivery of the receipt therefor, must be considered as parts of a single transaction. It is to be remembered that notwithstanding he had defaulted in making one of the payments, the defendant had a property right in the vehicle which was protected by the Conditional Sales Law. Mitchell v. Automobile Sales Co., supra.

"After extending the time of the payment to March 1st, the plaintiff had no right to advertise and sell the car prior to that date. If it had done so, it would have been guilty of a conversion. Brooks v. Range Motor Co., supra. In the absence of such a right there was no such default as permitted the execution of an effective waiver by the defendant of his right to have the car advertised and sold in the manner specified by the statute; for, when the plaintiff waived the default in the payment, it necessarily waived the rights which otherwise would have arisen from such a default. 78 C. J. S. [Sales sec. 594, p.] 339. The same reasons of policy which forbid that a waiver of the statutory advertisement and sale be made in the original contract or before default in payment and repossession of the property, apply no less to a waiver executed contemporaneously with an extension of time for a payment granted after default. Where there is a default, the necessity for protecting against oppressive action is equally as great if not greater, than when the contract is first executed. In such a case the seller stands to lose not only the vehicle and the amount he has paid thereon, but to suffer a deficiency judgment. In this situation he might well be induced to forego the undoubted advantage of a public sale in exchange for an opportunity to pay the amount he is in arrears. Our Supreme Court, defining the policy underlying the Conditional Sales Law, has recognized the fact that a private sale is to the advantage of the vendor and the disadvantage of the vendee.

"In Ward v. Sharp[e], supra, [139 Tenn.] at page 350 [200 S. W. at page 975], after pointing out that

the Conditional Sales Law permits the vendor to be a purchaser at the sale, it is said: 'It is more probable that when he sells without advertising he will become the purchaser and thus sacrifice the rights of the original vendee.'

"But apart from the extension of time granted the defendant within which to make the payment with respect to which he was in default, the circumstances were not such as to permit the execution by the defendant of a valid waiver. To justify this action there must have been not only a default in payment but the seller must have regained possession of the vehicle for the purpose of enforcing his claim. Russell v. Clinton Motor Co., 147 Tenn. 57, 60 [245 S. W. 529]. Possession for any other purpose will not suffice. B. A. C. Corp. v. Francis, 176 Tenn. 648 [144 S. W. (2d) 1098]. Since the plaintiff did not take possession for this purpose, but for the purpose of storing the property during the time given the defendant to redeem it and for 'later re-possession' in case the account was not brought to current basis, the waiver contemporaneously exacted of the defendant was ineffectual.

"If there were otherwise any doubt about the purpose for which the plaintiff took possession of the car, it would be dispelled by the language of the receipt for the vehicle which the plaintiff gave to the defendant at the time. As shown, this receipt not only recited that the car was to be held for storage until March 1st, but it apparently recognized that there would have to be a 're-possession' for the purpose of satisfying its claim before a valid sale could

be made. In such a case the vendor's possession is that of a bailee and it is incumbent upon him to repossess the property either by legal process or by express consent before proceeding to a re-sale, and a re-sale without such possession although pursuant to statute is a conversion. 47 Am. Jur. 147, Sec. 939; Brooks v. Range Motor Co., 16 Tenn. App. 209 [64 S. W. (2d) 42]; B. Lowenstein & Bros. v. Griffis, 16 Tenn. App. 603 [65 S. W. (2d) 587].

"The decision in Russell v. Clinton Motor Co., 147 Tenn. 57 [245 S. W. 529], does not require a contrary conclusion. There, the purchaser had voluntarily placed the vehicle which was the subject of the conditional sales contract, in the possession of the seller and had disclaimed all interest in it. It was accordingly held that the purchaser could not be heard to say that the seller was not in uncontroverted possession of it at the time he waived the advertisement and sale. There was no such disclaimer in the present case. See Mitchell v. Automobile Sales Co., supra [161 Tenn. at] page 9 [28 S. W. (2d) at page 53].

"The plaintiff contends that the extension of time granted by it to the defendant to make the payment with respect to which he was delinquent, was without consideration and therefore ineffectual as a waiver or otherwise. This, if it were sound, does not answer the view that the possession of the vehicle acquired by the plaintiff was not for the purpose of enforcing his claim but for the purpose of storing the car until March 1, with a view of subsequent repossession if the delinquent payments were

not made on or before that date. But we think that when the series of events is considered as a whole, the extension of time was supported by a sufficient consideration. Notwithstanding that he had defaulted in making the payment, the defendant was not obligated to surrender possession of the car for any purpose until the plaintiff established his right thereto by legal process. By reason of the extension he was induced to forego this right and turn the vehicle over to the plaintiff for the specified period. This was a sufficient consideration. It was a benefit to the plaintiff and a detriment to the defendant. University of Chattanooga v. Stansbury, 9 Tenn. App. 341; 10 C. J. S. [Bills and Notes sec. 160, p.] 634.''

In the Thompson case in answer to the vendee's insistence that the Trial Judge erred in dismissing his cross-action to recover sums paid on the conditional sales contract the court held; (1) that the assignment of errors did not properly present the question and no brief was submitted in support of such question and (2) that the vendee would not be entitled to recover under Williams Code Section 7291 because the court had held that the conditional vendor had regained possession of the automobile only for the purpose of storage and not for the purpose of enforcing his claim for the balance due— citing Murray v. Motor Sales Co., 160 Tenn. 140, 22 S. W. (2d) 227, 23 S. W. (2d) 913.

In the case before us on this appeal for valuable consideration Mr. Tedesco and Mr. McKee, as agent for General Motors Acceptance Corporation, entered into an agreement that General Motors Acceptance Corporation

would take possession of the automobile of Mr. Tedesco on June 25, 1956, for two alternative purposes: (1) To hold the automobiles as bailee of Mr. Tedesco until July 2, 1956, during which time Mr. Tedesco had the unqualified right to redeem his automobile by paying up the delinquent payments and costs; (2) Upon the failure of Mr. Tedesco to pay the delinquent payments and redeem the car on or before July 2, 1956, then the General Motors Acceptance Corporation was to hold the automobile no longer as bailee but for the purposes of selling said automobile for the enforcement of its conditional vendor's lien and the collection of the balance due on the conditional sales contract.

Contemporaneously and as part of the consideration for the extension of time within which he might bring up the arrears on his conditional sales contract Mr. Tedesco agreed in writing that if he should fail to redeem the automobile by July 2, 1956, the Acceptance Corporation could sell the automobile for the collection of its debt at either public or private sale without advertising the same as required by T. C. A. sec. 47-1302.

█ Mr. Tedesco's attorney asked for and was granted an extension of time until July 10, 1956, in which to redeem the automobile which modified the original agreement pro tanto. Therefore we hold that the General Motors Acceptance Corporation held Mr. Tedesco's automobile as bailee for him until July 10, 1956. Since the car was not redeemed on or before July 10, 1956, after said date the Acceptance Corporation held said automobile as a conditional vendor who had regained possession of the property with the express consent of the conditional vendee for the purposes of sale of said property,

enforcement of its lien and for the collection of its indebtedness.

T. C. A. sec. 47-1302 requires that under these circumstances the property be advertised for sale within ten days after regaining possession thereof which in this case would have been ten days from July 11, 1956. Admittedly, the Acceptance Corporation did not comply with the provisions of the statute but acted upon the authority of the written waiver signed by Mr. Tedesco contemporaneously with the surrender of the automobile as above set out.

■ Under the authority of the case of Therman Thompson v. Associates Discount Corporation, supra, and the other cases hereinabove referred to we hold that since Mr. Tedesco signed the waiver of advertisement and public sale before the seller regained possession of the automobile for purposes of sale and collection of its indebtedness that said waiver was ineffectual and the Acceptance Corporation was in the same position legally as if it had sold the automobile at private sale without any written waiver from Mr. Tedesco.

Under the express provision of T. C. A. sec. 47-1306 Mr. Tedesco is entitled to recover the full amount paid by him on the conditional sales contract and judgment will be entered in his favor against the appellee, General Motors Acceptance Corporation, in the amount of $1614.55 together with interest from the date of the filing of the suit below. International Harvester v. Farmer, 1939, 174 Tenn. 88, 123 S. W. (2d) 1089.

Avery, P.J. (Western Section), and Bejach, J., concur.