## B. LOWENSTEIN & BROS., INC., v. GRIFFIS.

Western Section. February 24, 1933.

Judgment Affirmed by Supreme Court, May 20, 1933.

604

Canada & Russell and Gordon I. Gordon, all of Memphis, for plaintiff in error.

C. B. Tipton, of Memphis, for defendant in error.

SENTER, J. The parties will be referred to as in the court below, E. B. Griffis, plaintiff, and B. Lowenstein & Bros., Inc., defendant.

This is an appeal from a judgment in favor of plaintiff for the sum of $421, representing the amount which plaintiff had paid to the defendant on a piano purchased by plaintiff from the defendant under a conditional sales contract.

The suit was tried before Hon. Thomas Keaton, special judge, in the circuit court of Shelby county, without the intervention of a jury. A written finding of facts was filed by the trial judge on the motion of the defendant. Plaintiff's suit is based upon the theory that, after the piano had been repossessed by the defendant by the consent of plaintiff, the defendant failed to advertise and sell the piano within ten days as provided by the Conditional Sales Law (Code 1932, sec. 7287), and that plaintiff was therefore entitled to recover the amount which he had paid to defendant on the piano, amounting to the sum of $421. The learned special judge took this view of the case, and rendered judgment accordingly in favor of plaintiff. From this judgment, the defendant prayed and was granted an appeal in the nature of a writ of error to this court, and has assigned errors. We quote from the written finding of the facts as found by the trial judge, as follows:

"On March 7, 1927, at Memphis, Tennessee, plaintiff as the conditional purchaser, entered into a conditional sale contract with the defendant as conditional seller, to purchase a piano for an agreed price of $695; $50 cash, and the balance by monthly installments of $18 on the 5th day of each month thereafter. He made payments to the seller up to June 16, 1930, when he was unable to work and quit his job. The total amount of the payments made is $421, which plaintiff sued for in this suit by reason of defendant failing to comply with the Conditional Sales Statute, as claimed by plaintiff. On July 16, 1930, the seller agreed to take the piano back for sixty days, to give the purchaser a chance to pay for it. It was not repossessed by seller until September 12, 1930, after plaintiff had written defendant a letter stating that if nothing else could be done they could take it back and call it even. This letter was written on 10th of September, 1930, while the purchaser still had possession of the piano. After receiving this letter from the purchaser, the defendant took the piano back into his possession and failed to advertise it within ten days, and defendant didn't then satisfy the account, but they conferred one with the other about the purchaser repurchasing the property. This was never consummated as a new contract. Under a prospective resale an attempt was made to redeliver it to the pur-

chaser, but it was refused by plaintiff. Another conference between them was the result of an effort to redeliver and resell, but this was not consummated as plaintiff refused to accept the piano on account of its condition. Defendant never accepted plaintiff's offer to square his account for the balance due under the contract, but on April 7, 1931, defendant advertised the piano and sold it. The defendant regained possession of the property from the plaintiff by consent, but failed to advertise and sell it within ten days after regaining possession on September 12, 1930. There was no waiver by the plaintiff of advertisement and sale of the piano by defendant after possession was regained. The piano was taken back by the seller for the reason that the purchaser was behind with his payments, and was unable to pay at the time. The Court further finds as a fact, that on April 7, 1931, the defendant began to advertise the piano for sale in an effort to comply with the conditional sales law, and on April 17, 1931, defendant sold the piano at public sale to the highest bidder for $270.35 cash, which sum was credited to the plaintiff's account.''

We find from an investigation of the record that there is very little conflict in the material evidence. There is no question made as to the amount which plaintiff had paid to the defendant on the piano. This amount was $421. On September 10, 1930, plaintiff was in arrears with his payments, and there then remained a balance of about $270 remaining unpaid on the contract price. Plaintiff was not in good health, and was temporarily out of employment. The defendant had made some request or demand on plaintiff to make payment on the contract. On September 10, 1930, plaintiff wrote defendant as follows:

"Dear Mr. Dean:—On August 19—30—I wrote you a letter—stating that I could not make a payment on my contract for piano. I am in such health that I am not making much money and I have had some more trouble between wife and I and we are not living together and the piano is at 217 Cossitt Street—cor. Eastmoreland.

"I asked you in my letter to take the piano back and if nothing else was to be done, that I would agree to lose what I have paid on the piano which I hate to do—but I acted a man and wrote you a letter asking you to get the piano and call it even, which is the only thing I can do. I have tried hard to sell it for $25.00 or $35.00 for my part to people who I know would be able to pay the account.

"Today—I received a statement and letter advising that if nothing done in five days that the Co. would want an answer.

"You have been nice to me and I am trying to be the same to you.

"Please advise me what you can do about the matter in return mail.

"The piano is at 217 Cossitt Street—cor. E. Moreland, upper apt.

"Please let me know.

"Very truly,

"E. B. Griffis.''

It also appears that, upon receipt of the above letter, the defendants sent to the address given in the letter and got the piano and took it to its storage room, where it was placed in a cage and marked "Griffis Piano." The defendant did not at that time close the account on the books by giving Griffis credit for the unpaid balance, but negotiations between the parties resulted in a proposition upon the part of the defendant to redeliver the piano to plaintiff upon plaintiff paying $25 cash and agreeing to pay $15 a month until the account was paid. Plaintiff was not in a position to accept that proposition, but submitted a counter proposition, wherein he proposed to pay to defendant $5 cash and $5 per month and also $5 interest. The defendant accepted this proposition, and sent the piano back to plaintiff. When the piano was returned to plaintiff, and before it was unloaded from the truck, plaintiff decided that he would not accept it, claiming that the piano showed scratches and perhaps other defects. The storage company notified defendant that the piano had been refused, and defendant again received it into its possession. Other correspondence followed between the parties, plaintiff's wife having called to see about it, but nothing further resulted, and on April 7, 1931, defendant posted the advertisements for the sale of the piano under the Conditional Sales Law, and on April 17, the piano was sold as advertised, and was purchased by an agent for defendant for the unpaid balance of $270.35, and defendant then credited plaintiff's account with the amount of the purchase price and closed the account.

There is little or no conflict in the evidence with reference to the above facts. The plaintiff testified that, when the piano was taken back by the defendant, it was to be held by the defendant for thirty to sixty days for him to have an opportunity to pay up the back payments and take the piano back. The defendant does not deny that this was the understanding. Although the letter September 10 would well warrant the construction that plaintiff was willing to have defendant take the piano back and satisfy the account, but he also testifies that there was an agreement between the parties that defendant was to take the piano back and hold it for thirty or sixty days to give him additional time in which to make payment. We think that, according to the undisputed evidence, the defendant took the piano back as bailee, and was holding it pending some adjustment of the account with plaintiff, and that negotiations were entered into between the parties and agreement reached whereby plaintiff would take the piano back and pay $5 cash and $5 per month, and that the piano was delivered to him, or sought to be delivered to him, on the new terms, and for the reasons stated by plaintiff, or for some other reason, plaintiff declined to accept the piano, and it was again returned to the defendant. The defendant proceeded

within ten days from the date of this return to advertise the piano for sale, as above stated.

Although plaintiff had expressed a willingness to have the defendant take the piano back in satisfaction of the balance due on the account and under the sales contract, yet it is clear from the record that both plaintiff and defendant, after plaintiff had agreed for the defendant to take the piano back, entered into further negotiations whereby plaintiff would take the piano by arranging new terms, but for reasons this was not consummated, and, after it failed of consummation, the defendant undertook to sell the piano by advertising and selling same under the Conditional Sales Law. There had been no express or implied agreement that defendant could do this, and hence, the defendant being in possession of the piano as bailee, it was incumbent upon it to repossess it either by legal process or by express consent of plaintiff before selling it under the conditional sales contract. This constituted a conversion of the piano, and would entitle plaintiff to recover the value of the piano at the time it was converted, less any amount that plaintiff then owed to the defendant on the piano. This would represent plaintiff's interest in the piano.

We think this case comes within the rule as announced by the Supreme Court in Murray v. Federal Motor Truck Sales Corp., 160 Tenn., 140, 22 S. W. (2d), 227, 23 S. W. (2d), 913, wherein it was specifically held that, where the conditional vendor procures possession of the property other than by process of law or by agreement of the parties, that the conditional vendor becomes the bailee and holds the property as bailee. It was also held in that case that, where the conditional vendor took possession of the truck involved in that case for the purpose of having it repaired, and thereafter notified the vendee that, unless the balance of the purchase price was paid by a certain date, that he would proceed to sell the truck under the Conditional Sales Law. this did not operate to change the relation of the parties from bailee and not a repossessed automobile for the purpose of resale. It was also held upon a rehearing in that case that, where there had been a conversion of the property by the conditional vendor, the measure of damages for which the vendor was liable was the difference between the value of the truck upon the date of this conversion and the amount due on the conditional sales contract.

We are therefore constrained to hold that the learned special judge was in error in holding that, under the facts, plaintiff was entitled to recover the amount which he had paid to the defendant on the piano. We are constrained to hold that under the undisputed facts the defendant was a bailee of the piano, and that his possession at the time of the sale was that of bailee. We are also of the opinion that the piano was properly advertised under the Conditional Sales Law and sold in conformity therein, but at the time of the sale the defendant was the bailee of the property and that the sale constituted

608

a conversion. The interest which plaintiff as bailor had in the piano was its value, less any balance which plaintiff owed to defendant on the piano. There is undisputed evidence in the record that the market value of this secondhand piano at the time of the conversion was only $150. However, there is no set-off nor cross-action pleaded. It is also true that, after advertising the piano, it was purchased by the defendant at the sale at the price of $270.35. Under these facts plaintiff was not entitled to recover any amount from the defendant in th's suit, for the reason that the piano at the time of the conversion was worth less than the amount of the debt, or at least not more than the amount of the debt.

It results that the judgment of the lower court is reversed and the suit dismissed. The cost of the suit, including the cost of this appeal, will be paid by plaintiff. The record does not show that plaintiff gave a cost bond.

Heiskell, J., concurs.