664

SOUTHLAND TRACTORS, INC., Appellee, v. H & N CONSTRUCTION COMPANY, Mildred Neal Hargett and Phillip S. Devereux, Appellants.—377 S.W. (2d) 789.

Western Section. July 3, 1963.

Certiorari Denied by Supreme Court October 11, 1963.

Martin, Tate & Morrow, Memphis, for appellants.

William A. Percy, Memphis, for appellee.

CARNEY, J. The Chancellor awarded complainant below, Southland Tractors, Inc., a judgment in the amount of $3,391.95 against the defendants, H & N Construction Company, Mildred Neal Hargett and Phillip S. Devereux. This judgment represented a deficiency plus attorneys fees on the balance due and owing on a lease-purchase agreement covering a dirt moving tractor called a "Trenchliner." The defendants and cross-complainants, H & N Construction Company and Mildred Neal Hargett, have appealed. The defendant Phillip S. Devereux has not appealed.

Appellants contend: (1) That under the Tennessee Retail Instalment Sales Act, T. C.A. sec. 47-1901 et seq., they as the purchasers of the machine are entitled to recover a judgment by set-off and counter claim against the original seller because the seller did not comply with the terms of the Retail Instalment Sales Act by showing on the face of the contract the cash price of $9,500.00 and the time price differential of $1,710.04; (2) that the complainants are barred from recovering any deficiency

judgment from the purchasers because the complainants were guilty of conversion in repossessing the trenchliner machine without the knowledge or permission of the appellants and without legal process.

The contract entered into between the parties is as follows:

"CIT          EQUIPMENT LEASE        23946
Corporation

<u>  9/29  </u>, <u>1961</u>
(Month, Day)

LESSEE: <u>H & N Construction Company & Mildred Neal Hargett & Phillip S. Devereux</u>

Address: <u>No. 1614 Buxton     </u> (Street or Avenue)

\*    \*    \*    \*    \*    \*    \*    \*

City and Postal Zone <u>Memphis</u> County of <u>Shelby</u> State <u>Tennessee</u>

LESSOR: <u>Southland Tractors, Inc.</u>

Address: No. <u>105 South Parkway West</u> (Street or Avenue)

City and Postal Zone <u>Memphis</u> County of <u>Shelby</u> State <u>Tennessee</u>

Lessor hereby leases to Lessee, and Lessee hereby hires and takes from Lessor the following-described personal property (hereinafter, with all replacement parts, additions, repairs and accessories incorporated therein and/or affixed thereto, referred to as 'equipment'):

1—Model 77 Parsons Trenchliner Serial No. 3816 w/standard equipment, unit number 1, w/16" bucket equipment and side cutters and 20" upper shute.

and Lessor agrees within immediately from the date hereof to cause said equipment to be delivered to Lessee, f. o. b.  Memphis, Tennessee

TERM : This lease is for a term of  36  months, beginning September 29, 1961, and ending ————, 1964.
(Month, Day)                                (Month, Day)

RENTALS : For said term or any portion thereof, Lessee shall pay to Lessor rentals aggregating $11,764.90, of which $554.86 is herewith paid in advance and the balance of the rental, $11,210.04, is payable in 36 equal, successive, monthly rental payments of $311.30 each, of which the first is due November 10, 1961, and the others on a like date of each month thereafter, until fully paid.

PLACE OF USE: Lessee shall keep the equipment at 1614  Buxton  Memphis  County of Shelby State of Ten-
(Street Address and City)
nessee, until Lessor in writing permits its removal, and shall be used in the conduct of Lessee's business solely.

REPAIRS: Lessor shall not be obligated to make any repairs or replacements; Lessee shall not incur for Lessor's account or liability any expense therefor without Lessor's prior written consent. Lessee shall inspect the equipment within 48 hours after its receipt; unless within said time Lessee notifies Lessor, stating the details of any defects, Lessee shall be conclusively presumed to have accepted the equipment in its then condition. Thereafter Lessee shall effect and bear the expense of all necessary repairs, maintenance, operation and replacements.

OPERATORS: Lessee shall cause the equipment to be operated by competent employees only, and shall pay all expenses of operation.

**LIABILITY**: Lessee shall indemnify and save Lessor harmless from any and all injury to or loss of the equipment from whatever cause, and from liability arising out of the use, maintenance and/or delivery thereof, but shall be credited with any amounts received by Lessor from insurance procured by Lessee. Damage for any loss or injury shall be based on the then true and reasonable market value of the equipment irrespective of rentals theretofore paid or accrued.

**INSURANCE**: Lessee, at its expense, shall keep said equipment insured, for the term of this lease and any renewals or extensions thereof, for the full insurable value thereof, against fire and theft with extended coverage and against such other risks in such amounts as Lessor may specify. Lessee shall on request of Lessor deliver to Lessor the policies or evidence of insurance with a standard long form endorsement attached thereto, showing losses, if any, payable to Lessor, in form satisfactory to Lessor, together with receipts for the premiums thereunder.

**TAXES**: Lessee shall comply with and conform to all laws, ordinances and regulations relating to the ownership, possession, use or maintenance of the equipment, and save Lessor harmless against actual or asserted violations, and pay all costs and expenses of every character occasioned by or arising out of such use, and pay promptly when due all taxes and other public or private charges against or upon the equipment, as additional rental therefor.

**TITLE**: All said equipment shall remain personal property, and title thereto shall remain in Lessor exclusively. Lessee shall keep the equipment free from

any and all liens and claims, and shall do or permit no act or thing whereby Lessor's title or rights may be encumbered or impaired. Upon expiration or termination hereof, the equipment shall be returned unencumbered to Lessor by Lessee at Lessee's sole expense and in the same condition as when received by Lessee, reasonable wear and tear resulting from proper use thereof alone excepted. Lessee shall pay rent at the said rate until all said equipment arrives at Lessor's premises.

INSPECTION: Lessee shall, whenever requested, advise Lessor of the exact location and condition of the equipment and shall give Lessor immediate notice of any attachment or other judicial process affecting the equipment, and indemnify and save Lessor harmless from any loss or damage caused thereby. Lessor may, for the purpose of inspection, at all reasonable times enter upon any job, building or place where the equipment is located; and may remove the equipment forthwith, without notice to Lessee, if the equipment is, in the opinion of Lessor, being used beyond its capacity or in any manner improperly cared for or abused.

NON-WAIVER: Time is of the essence. Lessor's failure at any time to require strict performance by Lessee of any of the provisions hereof shall not waive or diminish Lessor's right thereafter to demand strict compliance therewith or with any other provision. Waiver of any default shall not waive any other default. Lessor's rights hereunder are cumulative and not alternative.

NO WARRANTY: Lessor, not being the manufacturer of the equipment nor manufacturer's agent, makes no warranty against patent or latent defects in material, workmanship or capacity of the equipment, nor warranty

that the equipment will satisfy the requirements of any law, rule, specification or contract which provides for specific machinery or operators, or special methods; all liabilities arising therefrom are assumed by Lessee at its sole risk and expense. No oral agreement, guaranty, promise, condition, representation or warranty shall be binding; all prior conversations, agreements or representations related hereto and/or to said equipment are integrated herein. No modification hereof shall be binding unless in writing signed by Lessor.

POSSESSION: Lessor covenants to and with Lessee that Lessor is the lawful owner of said equipment free from all encumbrances and that, conditioned upon Lessee's performing the conditions hereof, Lessee shall peaceably and quietly hold, possess and use the equipment during said term without let or hindrance.

DEFAULT: In the event of Lessee's default hereunder or becoming insolvent or if Lessee ceases doing business as a going concern, or if a petition is filed by or against Lessee under the Bankruptcy Act or any amendment thereto (including a petition for reorganization or an extension), or if Lessee, without Lessor's prior consent, attempts to remove or sell or transfer or encumber or sublet or part with the possession of said equipment, or if Lessor deems itself insecure, Lessor and/or its agents may without notice or liability or legal process enter into any premises of or under control or jurisdiction of Lessee or any agent of Lessee where said equipment may be or by Lessor is believed to be, and repossess the equipment, disconnecting and separating all thereof from any other property and using all force necessary or permitted by applicable law so to do; Lessee hereby expressly waives

all further rights to possession of the equipment and all claims for injury suffered through or loss caused by such repossession. Should any legal proceeding be instituted by Lessor to recover any moneys due and to become due hereunder and/or for possession of the equipment, Lessee shall pay a reasonable sum (15% of the amount sued for if not prohibited by law) as attorney's fees, to be not less than $50.

ASSIGNMENTS: Neither this lease nor Lessee's rights hereunder shall be assignable except with Lessor's written consent; the conditions hereof shall bind any permitted successors and assigns of Lessee. If Lessor assigns the rents reserved herein or all or any of Lessor's other rights hereunder, assignee's rights shall be independent of any claim of Lessee against Lessor; Lessee on receiving notice of any such assignment shall abide thereby and make payment as may therein be directed. Following such assignment the term 'Lessor' shall be deemed to include or refer to Lessor's assignee.

MISCELLANEOUS: Lessee will not change or remove any insignia or lettering on the equipment and shall conspicuously identify each item of the leased equipment by suitable lettering thereon to indicate Lessor's ownership. All transportation charges shall be borne by Lessee. All notices relating hereto shall be mailed registered to Lessor or Lessee at its respective address above shown or at any later address last known to the sender. In case of any default by Lessee hereunder all sums due and to became due hereunder shall, at the option of Lessor or any assignee of Lessor, become payable forthwith. Lessee waives all rights under all exemption laws. Lessee admits the receipt of a true copy of this Equipment Lease. This

lease is irrevocable for the full term hereof and for the aggregate rental herein reserved, and the rent shall not abate by reason of termination of Lessee's right of possession and/or the taking of possession by Lessor or for any other reason, and delinquent instalments of rental shall bear interest at the highest lawful contract rate. In case of any default by Lessee hereunder, Lessor may sell the equipment or may re-lease the equipment for a term and a rental which may be equal to, greater than, or less than the rental and term herein provided. Any proceeds of sale, received within 60 days after repossession, or any rental payments received under a new lease made within such 60 days for the period prior to the expiration of this lease, less Lessor's expenses of taking possession, storage, reconditioning and sale or re-leasing, shall be applied on the Lessee's obligations hereunder, and Lessee shall remain liable for the balance of the unpaid aggregate rental set forth above. Lessee's liability shall not be reduced by reason of any failure of Lessor to sell or re-let within such 60 days.

PURCHASE OPTION: At any time after October 10, 1964, if Lessee has paid in full all rentals owing hereunder and be not then in default hereunder, Lessee shall have the option to purchase said equipment upon giving written notice not less than 30 days prior to expiration of the original term hereof. The purchase price shall be: One Dollar ($1.00)

Phillip S. Devereux
/s/ Phillip S. Devereaux

If Lessee is a corporation, this Lease is executed by authority of its Board of Directors.

Mildred Neal Hargett
/s/ Mildred Neal Hargett

| | H & N Construction Company |
| --- | --- |
| | (Lessee) (Signature of Individual or Name of Corporation or Partnership) |

(Witnesses as to      By Mildred Neal Hargett (Seal)
signature of Lessee)

ACCEPTED: Southland Tractors, Inc. _____ (Lessor)

/s/
By/J. B. Richardson _____ Its _____ ,,

C.I.T. Corporation financed the transaction. Monthly payments for November and December, 1961, were paid. H & N Construction Company apparently went out of business and no further payments were made. Mrs. Hargett and Mr. Devereux, both jointly and separately, attempted to dispose of the machine to other parties and relieve themselves of further liability on the contract. These efforts were unsuccessful and the machine was then stored by Mr. Devereux pending further negotiations with Southland Tractors and C.I.T. Corporation. Mrs. Hargett made efforts to return the machine to Southland, pay up the delinquent instalments and to receive a clear receipt in exchange therefor. Southland and/or C.I.T. refused to accept this agreement.

On May 21, 1962, Mr. George E. Morrow, attorney for Mrs. Hargett and for H & N Construction Company, wrote a letter to Mr. Phillip S. Devereux informing him officially that demand had been made by the C.I.T. Corporation of date May 15, 1962, for the payment of $1,588.95 representing delinquent instalments on the trenchliner. Mr. Morrow notified Mr. Devereux that Mrs. Hargett would expect him to reimburse her one-half of all amounts which she would be required to pay the C.I.T. Corporation and one-half of all expenses incurred

in the matter including her attorneys fees. On May 22 or May 23, 1962, Mr. Devereux, after receiving Mr. Morrow's letter, had a conference with officials of Southland Tractors, Inc., and informed them of the demands of Mr. Morrow. He told them where the trenchliner was located and agreed that Southland Tractors could repossess it.

On May 24, 1962, by letter the C.I.T. Corporation of Memphis, Tennessee, demanded of Southland Tractors, Inc. the complainants herein, that it take up the contract on the machine in the net balance of $9,655.99.

On May 24 or May 25, 1962, Southland Tractors, Inc. acting on the authority of Mr. Devereux and without obtaining any legal process and without the knowledge and permission of Mrs. Hargett and H & N Construction took possession of the trenchliner machine. It paid off the indebtedness due and owing to C.I.T. Corporation and posted notices for the sale of the machine at public auction on June 4, 1962.

Mrs. Hargett and her attorney were notified of the sale and appeared. Southland Tractors, Inc. bought the property in at a price of $6,000.00. The Chancellor found as a fact that the actual value of the property at the time of the sale was $6,400.00. The Chancellor allowed the defendants and cross-complainants credit in the amount of $6,400.00 rather than $6,000.00, the sale price, because he found as a fact that the complainants had repossessed the property without legal process and were therefore guilty of conversion.

The Chancellor held that the contract between the parties was in fact a conditional sales contract and was not in reality a contract for the lease of personal

property. He reached this conclusion upon the authority of Cowan v. Singer Manufacturing Co., 92 Tenn. 376, 21 S.W. 663; Singer Machine Co. v. Cole, 72 Tenn. 439. We concur. The case of Thompson & Green Machinery Company, Inc. v. M. P. Smith Construction Co., 44 Tenn. App. 26, 311 S.W. (2d) 614, was discussed and differentiated by the Chancellor. It is significant to note that in the Thompson & Green Machinery case the exact wording of the contracts is not shown in the opinion. The principal question involved was whether or not the rental cost of the machines was a lienable item under T.C.A. sec. 54-519 relating to contractual obligations on State of Tennessee constructions contracts. The Court held that it was.

In the court below and in this court appellants insist very strongly that the conditional seller is not entitled to a deficiency judgment because the conditional seller was guilty of conversion in repossessing the trenchliner machine without the consent of the purchaser, Mrs. Hargett, and without legal process. The appellants insist that a conditional seller is held by our courts to a strict compliance with the provisions of our statutes relating to and regulating conditional sales contracts. They cite and rely very strongly upon the case of Murray v. Federal Motor Truck Sales Corp., 160 Tenn. 140, 145, 22 S.W.(2d) 227, 23 S.W.(2d) 913 (1929) and many other of our Tennessee cases construing the conditional sales law.

It is admitted that the conditional seller, Southland Tractors, Inc., fully complied with that section of the conditional sales law which requires advertisement and sale of the personal property after possession has been regained by the seller because of the default of the purchaser in payment of the purchase price. We think His Honor the Chancellor correctly held that the fact of

conversion by the conditional seller in regaining possession did not extinguish the indebtedness due and owing by the purchasers.

In the case of Rice v. Lusky Furniture Co., 167 Tenn. 202, 68 S.W. (2d) 107, the conditional seller of certain furniture repossessed the furniture after default in the payment therefor without the consent of the purchaser and without process of law and was therefore guilty of a conversion. The property, however, was advertised and sold by the conditional seller as provided by statute. The plaintiff, Rice, conditional purchaser of the property, brought suit for the recovery of funds paid by him on said property under the provisions of T.C.A. sec. 47-1306. The Trial Judge dismissed the action and plaintiff Rice appealed to the Tennessee Supreme Court.

Mr. Chief Justice Grafton Green, in affirming the action of the Trial Court, reaffirmed the holding of Murray v. Federal Motor Truck Sales Corp., 160 Tenn. 140, 145, 22 S.W.(2d) 227, 23 S.W.(2d) 913, to the effect that Section 7291 of the Code (now T.C.A. sec. 47-1306) was not intended to provide a penalty for the unlawful retaking by the conditional vendor of goods sold under a contract retaining title but to provide a penalty for the unlawful retention or disposition of the property by the conditional vendor after possession was regained. The Court reannounced the rule of Murray v. Federal Motor Truck Sales Corp. to be that where the truck was converted the vendee is entitled to recover the value of his interest in the truck which would be the value of the truck less the amount owing to the vendor. In the Rice case, since it was stipulated that the value of the furniture was less than the amount due and owing therefor the court held

that the Trial Judge properly dismissed the suit against Lusky Furniture Company.

It is the contention of the appellants on this appeal that where the conditional seller commits a conversion by repossessing the property, though the purchase payments are in default, the conditional seller thereby forfeits all right to recover any deficiency judgment against the conditional purchaser. We find nothing in our decided cases and nothing in the provisions of the conditional sales law justifying or supporting such a contention. His Honor the Chancellor correctly held that the complainant, Southland Tractors, Inc., having advertised and sold the property as provided by law, was entitled to recover a deficiency judgment against the conditional purchasers even though such seller was guilty of a conversion in repossession of the property. The Chancellor also correctly required the sellers to give the purchasers credit for the full value of the property of $6,400.00 rather than only credit for $6,000.00 which was the sale price of said property. Therefore, assignment of error No. IV is respectfully overruled.

By assignments or error I, II and III the appellants insist that the lease contract involved in this litigation comes within the provisions of the Retail Instalment Sales Act of 1961, T.C.A. secs. 47-1901 to 47-1910 inclusive. This law was first enacted as Chapter 219 of the Public Acts of 1959 and later re-enacted as Chapter 110 of the Public Acts of 1961. Among other things the act requires a retail instalment contract for the sale of personal property (with certain exceptions) to be in writing and to state the cash price of the goods, the amount of the buyer's down payment, the amount of fees and insurance charged to the buyer and the "time price dif-

ferential'' which is defined by Section 1903 as the amount the buyer contracts to pay for the privilege of paying in instalments. The act further sets out the maximum charges which the seller may make per $100.00 of principal balance each year and the percentage decreases as the principal increases. The buyer is given the privilege of prepaying in full at any time before maturity the unpaid balance and is given the right of a refund credit for the anticipation of payments. T.C.A. sec. 47-1907 provides as follows:

''47-1907. Violations a misdemeanor—Recovery of liquidated damages.—(a) Intentional and willful violations of this chapter shall be a misdemeanor punishable by a fine not to exceed five hundred dollars ($500).

''(b) In case of an intentional failure to comply with the provisions of this chapter, or in case the seller shall permit the buyer to sign a contract containing blank spaces not permitted by this chapter, the buyer shall have a right to recover from the person committing such violation or to set off or counterclaim in any action by such person to enforce a contract or agreement, as liquidated damages, an amount equal to the whole of the original time balance in a contract, and all amounts payable under an agreement with respect to the transaction or transactions to which such violation pertains, together with reasonable attorneys' fees.

''(c) In case of any other failure to comply with the provisions of this chapter, the buyer shall have a right to recover from the person committing such violation or to set off or counter claim in any action

by such person to enforce a contract or agreement, as liquidated damages, an amount equal to two (2) times the time price differential charged to the buyer, together with reasonable attorney's fees.

"(d) Notwithstanding the provisions of this section, no person shall be subject to any penalty for any failure to comply with any provision of this chapter until the retail buyer has notified such person in writing of such failure and unless within thirty (30) days after such notice such failure is not corrected by such person. (Acts 1961, ch. 110, sec. 1.)"

Admittedly the contract in the present case did not comply with the Retail Instalment Sales Act and did not show the time price differential of $1,710.04 nor the cash sales price of $9,500.00. It is the contention of appellants that they are entitled to recover from the sellers by way of setoff and counter claim under subsection (b). We copy appellants' computation from their brief as follows:

"Seller entitled to receive:

| | | | |
|---|---|---|---|
| (1) | Money deficiency judgment in amount of time balance ($11,210.00) less two monthly payments ($622.78), less repossessed machine ($6,400.00) | $ 4.187.22 | |
| (2) | Attorneys' fee | 450.00 | |
| | Total Money Judgment | | $ 4,637.22 |
| (3) | Down payment | | 584.86 |
| (4) | Monthly installments | | 622.78 |
| (5) | Value of repossessed machine | | 6,400.00 |
| | TOTAL RECEIPTS BY SELLER | | $12,244.86 |

Buyer recovers:

(1) Time balance on contract
(including two monthly payments
already made)                    $11,210.00
(2) Attorneys' fee                    450.00

                                     $11,660.00
(3) Down Payment                        584.86

    TOTAL GROSS RECOVERY
    BY BUYER                         $12.244.86

Net Judgment due Buyer:
(1) Buyer's total recovery              $12,244.86
(2) Credit given by Seller for
value of repossessed
machine                     ($ 6,400.00)
(3) Seller's money judgment   (  4,637.22)
                                        (11,037.22)

    NET JUDGMENT
    DUE BUYER                          $ 1,207.64

"The net amount of $1,207.64 due to the buyer is equivalent to a refund of the down payment ($584.86) plus the two monthly installments ($622.78) which Buyer has paid."

The Chancellor very aptly observed that the purpose of the act (Retail Instalment Sales Act) was good but the draftsmanship was horrible. The Chancellor professed bewilderment and lack of capacity to fully understand 47-1907. However, since it affirmatively appeared that the purchasers had never given any notice in writing

to the seller of its failure to comply with the Retail Instalment Sales Act, the Chancellor held that the purchasers, appellants herein, were not entitled to recover anything by way of set-off or counter claim under T.C.A. sec. 47-1901 et seq. The Chancellor quoted from and referred to with approval an analysis and discussion of this act from 12 Vanderbilt Law Review, page 1278, et seq.

The appellants very earnestly contend that only subsection (a) of 47-1907 quoted above providing for a fine not exceeding $500.00 is penal and that subsections (b) and (c) are remedial because they provide for the recovery of liquidated damages. Appellants cite and rely upon our Tennessee case of Tapp v. Price Bass Co., 177 Tenn. 189, 193, 147 S.W.(2d) 107, 108.

■■ We concur in the holding of the Chancellor that the provisions of subsection (d) of 47-1907 operate to relieve the seller from liability under subsection (a), subsection (b) or subsection (c) unless he shall have had notice in writing of his failure to comply with any provision of the Retail Instalment Sales Act and shall have failed to correct such failure within thirty days after receipt of the notice. From Cyclopedic Law Dictionary, Second Edition, we quote the following definition of the word "penalty":

"In its narrowest sense, it includes only pecuniary punishment imposed by statute for such unlawful acts as do not constitute crimes or which are for this purpose regarded in other than their criminal aspect.

"* * * In Contracts. A clause in an agreement, by which the obligor agrees to pay a certain sum of

money if he shall fail to fulfill the contract contained in another clause of the same agreement.

"A penal obligation differs from an alternative obligation, for this is but one in its essence; while a penalty always includes two distinct engagements, and when the first is fulfilled the second is void. When a breach has taken place, the obligor has his option to require the fulfillment of the first obligation, *or the payment of the penalty, in those cases which cannot be relieved in equity, when the penalty is considered as liquidated damages.*" (Italics ours.)

We notice that Chief Justice Grafton Green, in the opinion of Rice v. Lusky Furniture Company, 1934, 167 Tenn. 202, 68 S.W.(2d) 107, uses the word "penalty" in referring to the recovery by the purchaser under the conditional sales act, T.C.A. sec. 47-1306, formerly Code of 1932 Section 7291, where the seller failed to advertise the property after regaining possession.

We agree with the writer in 12 Vanderbilt Law Review page 1278 that "this latter provision" [subsection (d) quoted above] "would seem to take away the effectiveness of the sanctions imposed and of the act itself. Under this provision the seller will be able to continue any oppressive business practices against the installment buyer with the assurance of no criminal or civil sanctions unless the buyer notifies him that he has violated the act; and after notification, he has thirty days to protect himself against any liability for even an intentional violation of the act."

In our opinion the case of Tapp v. Price Bass Co., 177 Tenn. 189, 147 S.W.(2d) 107, relied upon by appellants is not controlling of the case at bar. It merely holds that state courts have authority under the Fair Labor

Standards Act of 1938, U.S.C.A. Title 29, sec. 201 et seq. to award recovery to employees of unpaid minimum wages, overtime compensation, plus an equal amount as liquidated damages, plus attorneys' fees.

Assignments of error Nos. I, II and III are respectfully overruled.

The judgment of the lower court will be affirmed with interest. The costs will be taxed against the appellants.

Avery, (P.J.,W.S.), and Bejach, J., concur.