HARRIS TRUCK & TRAILER SALES and Buster Bennett, Plaintiffs in Error, v. RAY FOOTE, Defendant in Error. —436 S.W.(2d) 460.

Western Section. June 25, 1968.

Certiorari Denied November 5, 1968.

Don Owens, Memphis, John P. Bradshaw, Cape Girardeau, Mo., for plaintiffs in error.

Dale Woodall, Memphis, for defendant in error.

BEJACH, J. In this cause, Harris Truck & Trailer Sales and Buster Bennett appeal in error from a jury verdict and judgment against them in the Circuit Court of Shelby County, Tennessee for $8,000 recovered on the theory that plaintiffs in error had wrongfully converted a Diamond-T tractor belonging to defendant in error, Ray Foote. The parties will be hereinafter referred to, as in the lower court, as plaintiff and defendants, or called by their respective names.

The tractor in question had been purchased on January 25, 1965 as a "used" tractor by one D. L. Lindsey from Harris Truck & Trailer Sales for the sum of $8,020.80, for which purchase he made a down payment of $1,500 and contracted to pay the balance of $6,520.80 in twenty-four monthly installments of $271.67 each, beginning February 25, 1965, and monthly thereafter. Said D. L. Lindsey then executed a Tennessee security agreement, in which the Harris Truck & Trailer Sales retained title to the tractor. Among other provisions, the security agreement contains the following covenant:

"Time is of the essence of this security agreement, and if I fail to pay any of the installments when due or otherwise breach or fail to perform any of the provisions or promises herein, or if attachment, levy of

execution or other process issues against the motor vehicle, or in the event of bankruptcy or insolvency or if the holder shall deem himself insecure, all unpaid installments shall immediately become due and payable without notice or demand and the holder hereof may, without notice or demand, and with or without process of law enter any premises where said motor vehicle may be and take possession of it and sell it at public or private sale with or without notice and all sums paid hereunder may be retained for use of the vehicle.''

D. L. Lindsey made the monthly payments for February, March, April and May of 1965 and obtained two extensions for June and July of that year. On October 5, 1965, notwithstanding the extensions previously granted, Lindsey was in arrears for two months, namely, August and September of 1965. Shortly before that date, Lindsey and Foote entered into an agreement under the terms of which plaintiff was to purchase Lindsey's equity in the tractor for the sum of $500.00. On October 5, 1965, Lindsey and plaintiff went to the place of business of defendants where they and defendant Buster Bennett, as representative of the defendant Harris Truck & Trailer Sales, agreed that for the payment by plaintiff of $500.00 to Lindsey, payment of the two installments which were in arrears, payment within six months of a repair bill of approximately $600.00, payment for insurance on the tractor, and payment of the future monthly installments when due, plaintiff might be substituted for D. L. Lindsey as purchaser of the tractor, all conditioned, however, on plaintiff's credit being approved by Associates Discount, Inc., to which company Harris Truck & Trailer Sales had assigned the security agreement. Plaintiff admitted in his testimony that the deal was conditioned

on approval of his credit by Associates Discount, Inc., and the record shows that his credit was never approved by that company. It therefore follows, necessarily, that D. L. Lindsey was never released from his obligation on the security agreement.

Plaintiff paid to D. L. Lindsey $300.00 of the $500.00, which payment was made to Harris Truck & Trailer Sales for his benefit. Plaintiff paid to Harris Truck & Trailer Sales on October 5, 1965 the sum of $200.00, and on October 11, 1965 the total sum of $653.34, for which he received receipts signed by E. B. Bennett, reading: "A receipt for $353.34 Three Hundred and Fifty-Three Dollars and 34/100 to Mr. Ray Foote on Don Lindsey's truck" and another "receipt for $300.00 Three Hundred and no/100 for Mr. Don Lindsey". Plaintiff also paid $271.69 for one truck payment and $100.00 on the garage repair account, but he made no payments thereafter. Plaintiff was told by Buster Bennett, after making his payment October 11, 1965, that the payments were "caught up", and he was permitted to take possession of the tractor.

After Christmas of 1965, plaintiff conferred with defendant, Buster Bennett, and promised to pay up after he returned from a hauling trip to Chicago. He claims that Bennett agreed at that time to wait until his return from Chicago for further payments on the tractor.

Plaintiff returned from Chicago on or about January 1, 1966, and took the tractor with a trailer loaded with merchandise attached to it to the Central & Southern Truck Lines lot where he parked the tractor and trailer and went home. When plaintiff returned to the Central & Southern Truck Lines lot the next day, he found the

trailer disconnected and the tractor gone. He reported the tractor as stolen, but later found that defendant Buster Bennett, accompanied by D. L. Lindsey, had been to the Central & Southern Truck lot, where Lindsey had disconnected the tractor from the trailer, taken possession of the tractor, and driven it to the place of business of the Harris Truck & Trailer Sales where he left it. There is considerable dispute in the record as to whether Lindsey was acting as agent for Harris Truck & Trailer Sales, or acting for himself in taking possession of the tractor and driving it back to the place of business of Harris Truck & Trailer Sales. At any rate, on the theory that Lindsey was acting as agent for Harris Truck & Trailer Sales, plaintiff brought suit February 7, 1966 in the Circuit Court against Harris Truck & Trailer Sales and Buster Bennett.

His declaration is in four counts, which present different and somewhat diverging theories of liability. Defendants filed a plea of not guilty, and later, on order of court, filed special pleas. The cause was tried to a jury before Hon. Greenfield Polk, Judge of Division V of the Shelby County Circuit Court. The defendants offered no proof, but moved for a directed verdict at the conclusion of plaintiff's proof, and rested when that motion was overruled. The cause was submitted to the jury on the issue of whether Lindsey, in taking possession of the tractor had acted as agent for Harris Truck & Trailer Sales, and on the issue of whether or not such taking constituted a wrongful conversion by defendants. The jury returned a verdict in favor of plaintiff against both defendants for $8,000. Defendants filed a motion for new trial, which was overruled, after which they appealed in error to the Court of Appeals, where defendants, as

appellants, have filed six assignments of error. We deem it unnecessary to copy these assignments of error into this opinion, or to discuss them separately, except incidentally in disposing of Assignment of Error I, which is to the effect that the trial court erred in overruling defendants' motion for a directed verdict made at the conclusion of plaintiff's proof. We think that motion should have been granted, and, consequently, we think that assignment of error is conclusive of this law suit.

■■ We think it is immaterial whether D. L. Lindsey was acting as agent for defendants, or acting in his own behalf. One of the assignments of error complains because the trial judge submitted to the jury the issue of wheather Lindsey was acting as agent for Harris Truck & Trailer Sales instead of ruling on it himself and holding as a matter of law that Lindsey was acting for himself. As stated, however, we consider this issue immaterial, because, in any event, both Lindsey and plaintiff were in arrears at the time the tractor was taken from the Central & Southern lot. Consequently, whether Lindsey was acting for himself or on behalf of Harris Truck & Trailer Sales, the latter had the right to possession of the tractor. Under the express terms of the security agreement, Harris Truck & Trailer Sales had authority, without notice or demand and with or without process of law, to enter any premises where said motor vehicle was and take possession of it. Independent of the contract right which defendants had to take possession of the tractor without process of law, T.C.A. section 47-9-503, which is part of the Uniform Commercial Code, provides:

"Unless otherwise agreed a secured party has on default the right to the possession of the collateral. In

taking possession a secured party may proceed without judicial process if this can be done without breach of the peace or may proceed by action.''

■ The trial judge submitted to the jury the question of whether defendants, in taking possession of the tractor, had committed a breach of the peace, and, in so doing charged the jury that a breach of the peace did not necessarily include an act of violence or threat of violence. This charge is complained of by one of the assignments of error, and in this we think the learned trial judge erred. In our opinion, the phrase, ''if this can be done without breach of the peace'', as used in T.C.A. section 47-9-503, should be construed according to the ordinary and usual meaning of the words there used. We are aware that the Supreme Court in the case of State ex rel. Thompson v. Reichman, 135 Tenn. 685, 188 S.W. 597, held that the unlawful sale of intoxicating liquor in Tennessee constituted a breach of the peace, but that conclusion was arrived at by a somewhat involved process of reasoning; and even in that case, after quoting from 5 Cyc. 1024, the opinion of the Supreme Court says:

''By this we understand that there are some breaches of the peace in which the 'incitement of terror or fear of personal violence is a necessary element,' and, as to these, the act complained of must be such as to reasonably produce terror or fear. They consist of offenses which invade the security and protection which the law affords the individual citizen, and as to which it is sometimes, and probably generally, held that there must be some kind of violence, either actual or threatened.'' State ex rel. Thompson v. Reichman, 135 Tenn. 702, 188 S.W. 602.

■ We think the legislative intent in the enactment of T.C.A. section 47-8-503, in using the words "if this can be done without breach of the peace", contemplated that the breach of the peace there referred to must involve some violence, or at least threat of violence. It is therefore our opinion that the learned trial judge erred in submitting to the jury the issue of whether or not defendants went on the premises of the Central & Southern lot and repossessed the tractor without a breach of the peace, and in charging the jury that it might find as a fact that a constructive breach of the peace had occurred. The evidence was undisputed on this point, and the judge should have ruled, as a matter of law, that the defendants had repossessed the tractor without a breach of the peace, and should have granted defendants' motion for a directed verdict. In any event, the construction of the statute was for the court and not for the jury. Along the same line, the trial judge erred in submitting to the jury the question of whether or not the defendant Bennett granted an extension of the contract after Christmas 1965. T.C.A. section 47-1-107 provides, "Any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party", but the claimed extension in the instant case is not in writing, and even if granted as claimed by plaintiff, there was no consideration. In the case of oral contracts, it is necessary to allege in the pleadings and prove a consideration. Jackson Bros. v. Harpeth Nat'l Bank, 12 Tenn.App. 464, 470.

■ In addition to other assignments of error, by Assignment of Error II, defendants contend that the verdict in the instant case is excessive, and so excessive

as to indicate passion, prejudice, or caprice; and by Assignment of Error VI, they complain that the trial court erred in charging the jury as to the measure of damages, if the jury found that defendants had converted plaintiff's tractor. In view of the fact that we hold that defendants' motion for a directed verdict should have been granted, and that plaintiff's suit should have been dismissed, these assignments of error are, of course, immaterial, but if we happen to be wrong in ruling that the defendants' motion for a directed verdict should have been granted, they would become material and should, in our opinion, be sustained. Even if there had been a conversion of plaintiff's truck by defendants, the measure of damages would have been the value of the truck at the time of the conversion, less the amount owing to the vendor thereon. Murray v. Federal Motor Truck Sales Corp., 160 Tenn. 140, 22 S.W.2d 227; 23 S.W.2d 913; B. Lowenstein & Bros., Inc., v. Griffis, 16 Tenn.App. 603, 65 S.W.2d 587; Southland Tractors, Inc. v. H. & N. Construction Co., 52 Tenn.App. 664, 377 S.W.2d 789.

In Murray v. Federal Motor Truck Sales Corp., 160 Tenn. 140, 22 S.W.2d 227; 23 S.W.2d 913, a truck sold under a conditional sales contract, with title retained in the vendor, was damaged in a collision. The vendee delivered the truck to the vendor for repairs. The vendor collected insurance but instead of applying the insurance proceeds to repair of the truck, it applied same to payment of the vendor's indebtedness. In that situation, the vendee sued for and recovered, under the provisions of section 3669, Shannon's Code (sec. 47-1306 T.C.A.), all payments which he had made on the truck. The Supreme Court held, however, that the vendee was not entitled to recover under the provisions of 47-1306 T.C.A., but

was entitled to recover for a conversion of his truck, and that the measure of damages was the value of the truck at the time of the conversion, less any balance due thereon. In the instant case, the jury's verdict of $8,000 is almost identical with the purchase price of $8,020.80, which D. L. Lindsey had agreed to pay for same January 25, 1965, and this, notwithstanding Lindsey had paid $1,500 at the time of his purchase and had made four subsequent payments of $271.67 each, and plaintiff had made two payments of the same amount. This discrepancy is so glaring that we cannot refrain from calling attention to it, even though our decision that plaintiff's suit must be dismissed renders it immaterial.

For the reasons above stated, defendants' Assignment of Error I will be sustained, defendants' motion for a directed verdict granted, and plaintiff's suit dismissed. The costs of the cause, including both the costs of the lower court, and the costs of the appeal, will be adjudged against the plaintiff.

Avery, P.J.(W.S.), and Carney, J., concur.