William K. WALKER, Plaintiff-Appellee,

v.

**ASSOCIATES COMMERCIAL CORPO-
RATION and Tom Taylor,
Defendants-Appellants.**

Court of Appeals of Tennessee,
Western Section, at Knoxville.

Dec. 9, 1983.

Application for Permission to Appeal
Denied April 2, 1984.

Raymond E. Lacy, Knoxville, for plaintiff-appellee.

George F. Legg, W. Dale Amburn, Knoxville, for defendants-appellants.

CRAWFORD, Judge.

Defendants, Associates Commercial Corporation (Associates) and Tom Taylor (Taylor), appeal from the judgment of the trial court on a jury verdict. The jury returned a verdict against Associates and Taylor in favor of plaintiff, William K. Walker (Walker), for $45,000 compensatory damages and $80,000 punitive damages which the trial court later remitted to $45,000 compensatory damages and $30,000 puni-

tive damages. Walker accepted the remittitur under protest.

The suit as originally filed included Peterbilt of Knoxville, Inc., as a party defendant, but Walker voluntarily dismissed this defendant during the trial of the cause.

The material allegations of the complaint follow: By virtue of a document entitled Security Agreement (Conditional Sale Contract)—hereinafter referred to as the contract—dated October 24, 1979, Walker purchased a 1978 Peterbilt truck from Peterbilt of Knoxville, Inc., and the contract was then assigned to Associates. The total sale price was $61,117.71 to be paid in 36 monthly installments of $1,447.92 each with the first installment due on November 24, 1979. Prior to the due date of the first installment the vehicle was wrecked and required repairs that kept the tractor out of service. Because of these circumstances Walker obtained an extension of time to pay Associates the first installment. Afterwards, installment payments were made through February; however, in March of 1980, the truck broke down in Kansas necessitating repairs, and the installment due in March of 1980 was not made by Walker. Walker further alleges that the amount due for repairs was only partially covered by warranty. Concerning the remaining amount of $1,500 due on the repair bill, Walker, on April 21, 1980, informed Taylor, an employee of Associates, that he could borrow this amount from friends and relatives in order to obtain the release of the truck from the repair facility in Kansas. Walker and Taylor discussed the past due installment and the necessity of "working" the truck. Taylor informed Walker that he should "go get it, put it to work and then catch this up." Walker avers that as a direct result of the representations of Taylor, he did procure a loan from his friends and relatives, went to Kansas and paid the amount due of $1,500. Therefore, Walker had obtained the truck and was in the process of going to work for another company when he was told on April 28, 1980, that the truck would be repossessed. Associates did in fact pick up the truck on April 29, 1980. Walker states that this repossession breached the oral agreement reached between himself and Taylor that he could work the vehicle and make up the payments. The complaint specifically avers that there was an express modification and waiver of the written contract provisions by virtue of these conversations between Walker and Taylor, the agent of Associates and that, therefore, the vehicle was wrongfully repossessed. As an additional cause of action, or in the alternative, the complaint alleges that Taylor acting within the scope of his authority made material misrepresentations of fact concerning Walker's right to work the truck on which he justifiably relied, and that these misrepresentations were willfully, wrongfully and intentionally made with the design and intent to deceive and defraud the plaintiff into paying off the lien of the repairman. The complaint further avers that the truck was damaged through the negligence of the defendant, that Walker received a notice of a public sale which did not take place and that later the vehicle was sold by Associates to Peterbilt, constituting a conversion.

The answer filed by Associates joins issue on the allegations of the complaint and further avers that it repossessed the vehicle pursuant to the contract, that no extension had been given as averred by Walker and that no fee had been paid for an extension. Associates generally denies breaching the contract. The answer further denies any misrepresentation as alleged and avers that the vehicle was sold pursuant to the notice of sale to Peterbilt for $40,762.42. Associates further avers that Walker breached the contract of sale by failing to pay the installment payments as due and that the repossession of the vehicle was pursuant to the contract. Taylor's answer to the complaint joins issue on the material allegations thereof. He denies making any representation creating an extension of the contract terms and states that no fee was paid for any extension. Taylor further asserts that he did not cause the repossession, nor did he cause the sale.

Associates and Taylor present eight issues with various subparts for review by the court. The first issue presented on behalf of Taylor and Associates is whether the trial court should have directed a verdict for these parties at the end of all of the proof in the cause. For the reasons hereinafter set out we feel that the trial court should have directed a verdict for the defendants in part.

On considering a motion for directed verdict, the court is required to take the strongest legitimate view of the evidence in favor of the plaintiff, including all reasonable inferences in the plaintiff's favor, and disregarding any evidence to the contrary. A verdict may be directed only if there is no material evidence in the record which would support the verdict for the plaintiff under any of the theories which plaintiff had advanced. *Wharton Transport Corp. v. Bridges*, 606 S.W.2d 521 (Tenn.1980); *Cecil v. Hardin*, 575 S.W.2d 268 (Tenn.1978); *Callahan v. Town of Middleton*, 41 Tenn.App. 21, 292 S.W.2d 501 (1954).

The suit is premised basically on the contract between Peterbilt as a seller, Walker as a purchaser and subsequently Associates as the assignee of Peterbilt. Taylor is in no way a party or involved in any manner with the written contract; therefore, the minds of reasonable men could not differ as to whether he breached a contract to which he was not even a party. Consequently, the trial court should have directed a verdict for Taylor on the breach of contract claim.

Associates, by virtue of the assignment from Peterbilt, is a party to the contract. The contract clearly provides that time is of the essence and that a default occurs, among other things, when the buyer fails to pay when due any amount owed to the seller. The contract also provides "no waiver or change in this agreement or in any related note shall bind seller unless in writing signed by one of its officers. The term 'seller' shall include any assignee of seller who is the holder of this agreement."

The provision just quoted is in the body of the contract signed by Walker.

Tenn.Code Ann. § 47–2–209 (1979), provides in part:

(1) An agreement modifying a contract within this chapter needs no consideration to be binding.

(2) A signed agreement which excludes modification or recission except by a signed writing cannot be otherwise modified or rescinded, but except as between merchants such a requirement on a form supplied by the merchant *must be separately signed by the other party.* (Emphasis supplied).

We feel the provision concerning modification of the contract quoted above is not enforceable in view of this section of the UCC. According to the contract before this court, the modification clause not allowing parol changes to be binding on the seller was not separately signed by Walker as explicitly stated by Tenn.Code Ann. § 47–2–209(2) (1979). Walker contends that Taylor on behalf of Associates extended the time for payment and thus modified the contract by parol, a situation resulting in no default by Walker and therefore no breach by Walker. With this theory he contends that Associates breached the contract by wrongfully repossessing the truck.

The dispositive issue in this case boils down to whether the contract was modified by parol. If so, Walker was not delinquent and Associates breached the contract by repossessing the truck. The undisputed proof is that at the time Walker allegedly obtained the oral extension from Taylor he was in default on the March, 1980, installment. The proof is equally undisputed that while there was some mention of an extension fee, no fee or other consideration passed to Associates. Walker contends that there was consideration that passed to Associates in that the payment Walker made to the repairer of his truck was a payment made for the benefit of Associates. We disagree. A debtor's agreement to pay off a superior lien in exchange for the promise of the inferior lienholder to withhold foreclosure could

constitute a valuable consideration, but in the case before us this contention was not seriously made. No notice of the introduction of evidence of Kansas law pertaining to repairman's lien was given pursuant to Tenn.Code Ann. § 24–6–204 (1980), nor was any such law introduced. In Tennessee the lien of the repairman would be superior to the lien of Associates. See Tenn.Code Ann. § 47–9–310 (1979), *Manufacturers Acceptance Corp. v. Gibson*, 220 Tenn. 654, 422 S.W.2d 435 (1967). If we presume that the law of Kansas is similar, this still would not be beneficial to Walker because the contract involved in the controversy provides:

A. Debtor warrants and agrees that: the Collateral is free from and will be *kept free from all liens, claims, security interests and encumbrances* other than that created hereby; ... (Emphasis supplied).

■ Having already agreed to keep the vehicle free of liens, Walker's agreement to pay the repairman is merely a renewal of the original covenant and cannot be the basis of a new consideration.

■ This case is controlled by Tenn.Code Ann. § 47–1–107 (1979) which we quote:

Waiver of renunciation of claim or right after breach.—Any claim or right arising out of an alleged breach can be discharged in whole or in part without consideration by a written waiver or renunciation signed and delivered by the aggrieved party.

Therefore, the modification of the contract claimed by Walker is ineffective. *See Harris Truck and Trailer Sales v. Foote*, 58 Tenn.App. 710, 436 S.W.2d 460 (1968); *Lindsey v. Ford Motor Credit Company*, unreported opinion, Court of Appeals, Eastern Section, filed October 3, 1978. Without a modification extending time for payment, Walker was clearly in default under the contract provisions, and Associates had every right to repossess the truck under the contract. Tenn.Code Ann. § 47–9–503 (1979). The trial court accordingly should have directed a verdict for Associates on the breach of contract claim of Walker.

■ Walker further asserts that Taylor acting for Associates was guilty of promissory fraud by his action in orally granting Walker an extension of time within which to make the installment and then repossessing the truck. He contends that this situation caused him to borrow money in order to pay the repairer of the truck which apparently he might otherwise not have done. Consequently, according to Walker his claim for damages would be limited to the $1,500.00 he borrowed to pay the repair bill, because Associates had the right to repossess the tractor. Yet, we cannot agree with Walker that he should have a cause of action against Associates for inducing him to pay a legal obligation he owed to the repairer. A verdict should have been directed for Taylor and Associates on this claim of Walker.

■ Walker also makes a claim against Taylor and Associates for conversion and for their failure to dispose of the repossessed truck in a commercially reasonable manner. As to the conversion claim, it is obvious that Associates did not convert the tractor since Associates had the right to repossess the vehicle as we have previously held. There is no material evidence in the record that suggests that Taylor was involved in the repossession of the tractor. Consequently, the trial court should have directed a verdict for Taylor and Associates on Walker's conversion claim.

■ As to the disposal of the vehicle, we have a different situation. The proof indicates that Walker was given notice of a public sale of the vehicle, but Walker's sister attempted to attend the sale and apparently was not successful since she could find no one present. On the other hand, Associates contends that its representative and a representative of the original seller, Peterbilt, were present at the time and place designated in the notice of the sale, that no one else appeared for the sale, and that Peterbilt bid in the property for the balance of the indebtedness due from Walker. There is a discrepancy and a

dispute as to whether Peterbilt actually bid on the property at the public sale for which notice was given or whether it, several months later, repurchased the property under its original recourse endorsement to Associates. The record indicates a dispute about material facts which clearly warrants the submission of this claim of Walker to the jury. This theory of Walker, along with several others, was submitted to the jury and the jury reported that it found against Associates and Taylor on all theories.

The trial judge instructed the jury on the law concerning commercially reasonable sale according to Tenn.Code Ann. § 47–9–504(3) (1979) which in pertinent part provides:

> Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.... reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor....

■ Consequently, the jury determined liability of Associates based in part on the failure of Associates to conduct a commercially reasonable sale. There is material evidence in the record to support the jury's verdict and thus this court will not disturb it as to liability on this claim.

■ However, the jury instructions did not delineate the damages assessible to the various theories of liability. Obviously, the damages claimed on the various theories are not the same, but the jury had no instruction of assessible damages resulting under each theory including this one. Therefore, the case should be remanded to determine the damages, if any, sustained by Walker resulting from the failure of Associates to conduct a commercially reasonable sale.

Since the case is to be remanded on the question of damages, we feel compelled to comment on the proper measure of damages for a claim of this type.

In secured transactions collateral is defined by its type of primary use in the hands of the debtor. In this case Walker used the truck in his tractor-trailer hauling business and so the truck is defined as "equipment." Tenn.Code Ann. § 47–9–109 (1979).

Tenn.Code Ann. § 47–9–507(1) (1979) provides in pertinent part:

> *Secured Parties Liability for Failure to Comply with this Part.*
>
> (1) If it is established that the secured party is not proceeding in accordance with provisions of this part disposition may be ordered or restrained on appropriate terms and conditions. If the disposition has occurred the debtor or any person entitled to notification or whose security interest has been made known to the secured party prior to the disposition has a right to recover from the secured party any loss caused by a failure to comply with the provisions of this Part....

In *Investors Acceptance Company v. James Talcott, Inc.*, 61 Tenn.App. 307, 454 S.W.2d 130 (1970), the plaintiff-creditor sued for a deficiency judgment after the sale of the collateral had not produced enough money to cover the indebtedness. Defendant-debtor contended that plaintiff did not dispose of the collateral in a commercially reasonable manner. The court, upon finding that the sale was not conducted in a commercially reasonable manner, remanded the case to the trial court, stating:

> [T]his cause will be remanded to the chancellor for the sole purpose of ascertainment of what amount, if any, is due complainant [creditor] after allowing defendant [debtor] credit for the fair value

of the security improperly sold by the complainant.

454 S.W.2d at 141.

 Thus, the court properly indicates the correct measure of damages as the excess of the fair market value at the time of repossession over the greater of the disposition sale price of the collateral or the indebtedness due on the collateral. Of course, if the disposition sale price is greater than the indebtedness, the debtor should have already received an amount representing such difference. Perhaps evidence can establish other losses that are within the purview of Tenn.Code Ann. § 47-9-507 (1979), and we do not mean to limit proof as to "any loss caused by a failure to comply."

This case is remanded to the trial court for the sole determination of the damages based on the failure of Associates to conduct a commercially reasonable sale. Again, the trial court should have directed a verdict in favor of Taylor on this claim as well, because there is no evidence in the record indicating that Taylor was involved in the sale. In summary, the judgment of the trial court against Taylor is reversed and dismissed. The judgment of the trial court against Associates is reversed and the case dismissed on all counts except the count based on the failure to conduct a commercially reasonable sale. The judgment against Associates on this count is affirmed as to liability only, and the case is remanded to the trial court for trial on the question of damages resulting from this liability. The costs of the appeal are adjudged equally against Walker and Associates.

NEARN, P.J. (W.S.), and TOMLIN, J., concur.